The Chicago City Railway Company

v.

Annette McClain.

*Opinion filed October 24, 1904.*

1. Variance—*objection of variance cannot be first urged on appeal.* Alleged variance between the pleadings and proof cannot be availed of, on appeal, in a suit at law, where no specific objection of variance was made at the trial nor a verdict asked upon that ground.

2. Release—*when question of effect of release is for the jury.* Whether an unwitnessed release is a bar to an action for personal injury is properly left to the jury, where there is evidence that the plaintiff signed the paper when in great pain and without knowing its character, the claim agent of defendant having represented to plaintiff that it was necessary to have her name.

3. Same—*effect where plaintiff's testimony as to execution of release is contradicted.* If plaintiff's testimony that she was fraudulently induced to sign a release in ignorance of its contents is contradicted by defendant's witnesses, it is a question for the jury to determine whether or not the release was fairly obtained.

4. Trial—*when question must be submitted to jury.* Whether a release was obtained by fraud must be submitted to the jury, notwithstanding the court is of the opinion it was fairly obtained and understandingly executed, if the opposite conclusion would not be manifestly against the weight of evidence.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county in favor of appellee for $2500, for damages for personal injuries sustained by appellee as the result of an accident to appellant's train running south on Wabash avenue, in the city of Chicago, appellee being a passenger thereon, October 13, 1899.

The declaration consisted of two counts, in which it is averred, substantially, that appellee, while a passenger, in the

exercise of ordinary care for her own safety, was injured by reason of appellant's careless and negligent management of the car in which appellee was riding.

At the time of the accident appellant was operating a cable street car line in the city of Chicago having a double track. The north-bound track was on the east side of Wabash avenue and the south-bound track was on the west side. Appellee, a pregnant woman, accompanied by a little child, boarded the next to the last car of a train south-bound, at the corner of Madison street and Wabash avenue. Wabash avenue is intersected at right angles by Randolph, Washington, Madison, Monroe and Adams streets and Jackson boulevard, from north to south, in the order named. The train in question was a grip-car and two or three passenger cars. When the grip-car reached Adams street, a large wagon, described by most of the witnesses as a coal wagon drawn by two horses, appeared in front of the train, going south. The testimony as to the distance of the wagon in front of the train varies, but a number of the witnesses seem to estimate it to have been about fifty feet. Appellee's witnesses claim this wagon was in the same track on which the train was. Appellant, however, contends it was on the other track and suddenly was pulled over on to the track the train was on. Just south of this wagon was an express wagon, also going south. Quite a number of witnesses claim that these wagons had been moving along on the south-bound track, in front of the train, for a considerable distance, just prior to the accident. When the driver of the coal wagon noticed the train he attempted to pull off the track to the west, but before he succeeded in doing so the grip-car struck the wagon, demolishing it and killing both horses. The train then continued running for a distance variously estimated from fifty to two hundred feet, and ran into and demolished the express wagon. After colliding with the express wagon the cable appears to have become detached and the train was stopped. Several witnesses testified that just before the collision the conductor and gripman shouted to the

passengers to jump to save their lives, and appellee and
others did jump from the train. Appellee stated that she
heard the conductor say "jump." She jumped, and landed
on her hands and feet. A man and lady helped her up, took
her to a dentist's parlor and laid her on a couch and gave
her something to drink. After being somewhat restored she
was again assisted to the sidewalk, where she was waiting
for a car, when a gentleman, who after proved to be a Mr.
Weil, claim agent of appellant, came up to her and engaged
her in conversation and finally procured a cab for her to go
home in. He got in the cab with her, rode with her a short
distance, told her he would have to have her name, and that
if she got very sick the company would send her a doctor.
He produced a piece of paper for her to sign her name on,
and she signed it. He then threw some money in her lap and
got out. Appellee states that during all this time she was
having severe pains; that she did not read the paper and no
one else did for her; that she did not know how much money
was left with her until she got home and her husband took it
from her lap, and she found it amounted to $25; that she
did not know what became of the money. The paper signed
proved to be a release to the appellant of all damages sus-
tained by reason of the accident, and appellant's agent, Mr.
Weil, claims it was signed knowingly and understandingly
by the plaintiff and without any misrepresentation on his
part. He also stated that he did not ask the plaintiff to make
a settlement of her claim, but that when the cab approached
Eighteenth or Nineteenth street the appellee asked him who
was going to pay for her dress, which was drabbled with
mud, and for the injury she had sustained, and he told her
that if the claim was large he would have to refer it to the
company but if it was small he would take care of it himself;
that she first asked $50, and he stated that if it was that
much he would have to refer it to the company, and finally
she said that if she got $25 right away she would be satis-
fied; that he then took out the release and read it to appel-
lee, and while he was getting the money she started to write

"$25," and he then stated to her that that was the place for her signature, and that appellee replied that she wanted him to pay for the cab, and she was going to put in there $25 and pay for the cab; that he told her that was not necessary— that he would pay for the cab; that he then paid appellee $25 and left the cab.

There is a direct conflict in the evidence as to the procurement of the release.

Counsel for appellant urge that the verdict is not justified by the evidence; that the evidence does not sustain the charge of negligence; that the release in question was a bar to recovery, and that the court should have directed a verdict for appellant, as requested.

William J. Hynes, Samuel S. Page, and Watson J. Ferry, (Mason B. Starring, of counsel,) for appellant.

David K. Tone, and H. M. Ashton, for appellee.

Mr. Chief Justice Ricks delivered the opinion of the court:

The record in this case, in our judgment, contains ample evidence tending to the conclusion that while appellee was a passenger upon one of appellant's cars it was being run at a high rate of speed along Wabash avenue, a crowded thoroughfare in the city of Chicago; that at least fifty feet in front of the train a wagon was being driven south along the track, and in front of this wagon was another, some distance ahead, going in the same direction and on the same track; that the train, notwithstanding the opportunity to see these wagons ahead, proceeded onward with but little, if any, diminished speed; that it struck the first wagon, demolished it, killed the team that was hitched to it, and then passed on and collided with the next wagon, demolishing it also before it was stopped. There is also evidence tending to show that the gripman and conductor, about the time of the collision, told the passengers on the train to jump to

save their lives, and many of them did jump, among the
number being appellee, who, being in a pregnant condition,
·received serious injury, which confined her to her bed and
induced pains and sickness until the birth of her child on
December 21 following the accident; that the child was
puny and died shortly after its birth. In view of such evi-
dence tending to establish appellee's theory of negligence,
notwithstanding the strenuous denial of appellant, the ques-
tions of negligence and the weight of the evidence were
proper subjects for the determination of the jury. *Slack* v.
*Harris,* 200 Ill. 96; *Boyd* v. *Portland General Electric Co.*
(Ore.) 57 L. R. A. 619.

But appellant contends that the evidence as to negligence
was not applicable to the particular negligence charged in
the declaration. The first count of the declaration avers
that appellee was a passenger on appellant's train and had
paid her fare, "when, through the negligence of defendant,
said grip-car began to run at a high rate of speed, and con-
tinued at such high rate of speed until it reached a point
between Adams and Jackson streets, where said grip, with
other cars attached, collided with certain wagons driving
along said Wabash avenue in a southerly direction, and de-
fendant failed to control or stop said car, and it then and
there became dangerous for plaintiff to ride upon said car,"
etc. The second count also avers: "And said defendant
then and there failed to control or stop said cars upon which
plaintiff was riding, and said cars then and there continued
to run at a high rate of speed along said street, and said car
then and there became unmanageable," etc.

We think the facts and circumstances which the evidence
tended to establish are in substantial accord with the aver-
ments of the declaration. But if it were otherwise, the con-
tention of variance comes now too late. The case appears
to have been tried upon its merits. No specific objection ap-
pears to have been made in regard to a variance between the,
evidence and the declaration during the trial or a verdict
asked for appellant upon that ground. In *West Chicago*

*Street Railroad Co.* v. *Martin,* 154 Ill. 523, an objection was urged to a certain instruction on the ground of variance, and it was there said (p. 531) : "The objection to the instruction, in substance, amounts to a claim of variance. The defect was curable, and had plaintiff's attention been called to the matter by a specific objection or exception, he could readily have amended one of the counts of his declaration by striking out the special matter alleged therein. Appellant not having afforded him an opportunity to do this, must be considered as having waived the objection that it now seeks to avail of." And in *City of Joliet* v. *Johnson,* 177 Ill. 178, it is said (p. 181) : "It is well settled that an objection alleging variance between the allegations and proofs must be made in the trial court, in order to afford an opportunity to the plaintiff to amend the declaration. Such objection should properly be made at the time the evidence is offered, otherwise it will be waived.—*Probst Construction Co.* v. *Foley,* 166 Ill. 31 ; *Village of Chatsworth* v. *Rowe,* id. 114."

Appellant next contends that the release offered in evidence was a bar to the action. This could not be the case if the jury believed appellee's story as to the procurement of this paper. She denies absolutely that she knew or understood that she was signing a release, and claims that the party who procured the paper represented to her that he must have her name, and she gave it to him when suffering great pain and with no thought or intention of executing a release. It was within the province of the jury to decide whether appellant's or appellee's story as to the release was correct, and we cannot say that there was no substantial evidence tending to support their finding in favor of appellee. The alleged release was procured by the claim agent of the appellant. He went to the scene of the accident with money and blank releases. He says, however, that he did not first approach the subject of release to appellee, but having procured a cab for her, while the two were riding together, when appellee was enduring great agony and when no one was near to advise or direct her, this instrument was secured. It

is not witnessed by anyone, which, in cases of this kind, would seem to be but a natural precaution on the part of appellant's agent.

Appellant, however, claims that the story of its agent, Weil, is corroborated by a Mrs. Bain, who testified that appellee stated to her that she had settled with the company for $25. A Miss Lief also testified that appellee told her that "they brought her home in a carriage and gave her $25" and that "she signed papers." The evidence of the latter is not inconsistent with the plaintiff's contention, and as to the evidence of the former, it is not necessarily conclusive. She was a trained nurse and attended appellee during her accouchement, and it was during this time that she claims appellee told her she had settled with the company. The jury saw and heard her and were the judges as to the credit that should be given her statements. Her memory of things is not shown to have been very accurate. Her demeanor may, in the eyes of the jury, have discredited her statement. At any rate, we cannot say that appellee's theory is so unreasonable and improbable that reasonable and fair-minded men would not be justified in accepting it as true. This court, in affirming the judgment in the case of *West Chicago Street Railroad Co.* v. *Lieserowitz,* 197 Ill. 607, said (p. 615) : "Even where the plaintiff was contradicted by the defendant and another witness, the judgment would not be reversed if there were elements of probability to turn the scale." We cannot say that in this case the story of appellee is lacking in elements of probability, and to the jury they may have been ample.

It is a well recognized rule that where the testimony of the plaintiff tends to show that he was fraudulently induced to sign a release and did so in ignorance of its contents, and this is contradicted by the testimony of the defendant, it is a question for the jury to determine whether the release was fairly obtained or not. (*Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440; *Pawnee Coal Co.* v. *Royce,* 184 id. 402.) And as laid down in *Indiana, Decatur and West-*

*ern Railway Co.* v. *Fowler,* 201 Ill. 152, the question of the knowledge and good faith with which the release was executed was one of fact, which has been determined adversely to appellant by the trial and Appellate Courts, and their determination is conclusive. In the case cited it was said (p. 153) : "The question whether the release was executed by appellee with full knowledge of its purport and under circumstances that would bind him was one of fact, and has been settled by the jury and the judgment of the Appellate Court adversely to appellant,"—citing *National Syrup Co.* v. *Carlson,* 155 Ill. 210, and *Illinois Central Railroad Co.* v. *Welch,* 52 id. 183.

It is urged by appellant that the trial court was of the opinion that the evidence was insufficient to justify the conclusion of fraud. What the court said was : "I will put into the bill of exceptions, if you want it, that I have a very strong opinion that the paper was signed by the woman understanding what she was doing. I will write that for the upper court." Even though the trial court may have been of the opinion expressed, it was still manifestly his duty to submit the question to the jury if the opposite conclusion would not be against the manifest weight of the evidence. As said in *Illinois Central Railroad Co.* v. *Gillis,* 68 Ill. 317: "If any rule of this court can be so well established as to be neither questioned nor require the citation of authority to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize the verdict, notwithstanding it may appear to be against the strength and weight of the testimony." This language was quoted with approval in *Lourance* v. *Goodwin,* 170 Ill. 390.

Appellee asks that in the event that this judgment is affirmed appellant be assessed with statutory damages, on the ground that this appeal was prosecuted for delay. This request will be denied, but the judgment of the Appellate Court will be affirmed.                    *Judgment affirmed.*