JAMES HARTLEY

*v.*

THE CHICAGO AND ALTON RAILROAD COMPANY.

*Opinion filed February 21, 1905.*

1. APPEALS AND ERRORS—*effect of reversal for failure to submit issues to jury.* Upon reversal and remandment for failure of the trial court to submit the issues to the jury, the principles of law announced in the opinion are binding upon the lower court on the new trial, but the question whether that court is justified in again directing a verdict depends upon the evidence then before the court upon which the ruling was based.

2. SAME—*when Supreme Court cannot look outside of the record to determine question.* If the trial court upon second trial again directs a verdict, basing its ruling upon a release given in evidence by the defendant, the question whether the trial court erred in directing the verdict for the defendant depends upon the validity of the release, and the Supreme Court cannot look outside of the record to determine that question.

3. RELEASE—*when release is a bar to action.* A release of all damages, signed by the plaintiff and under seal, is a bar to an action of law for damages, unless it can be impeached for fraud inhering in the execution of the instrument and not going merely to the nature or extent of the consideration.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

JAMES C. McSHANE, for plaintiff in error.

WINSTON, PAYNE & STRAWN, (F. S. WINSTON, and RALPH M. SHAW, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The record of a judgment for costs recovered in the superior court of Cook county by defendant in error against plaintiff in error, and affirmed by the Branch Appellate Court

for the First District, was brought before us on a former occasion, when the judgments were reversed and the cause was remanded to the superior court for another trial. The history of the case up to that time will be found in the opinion then filed. (*Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440.) The error for which the judgment was reversed was the refusal of the trial court to submit the issues to the jury. The cause was re-instated in the superior court and was again tried upon the same pleadings as before. At the close of the evidence the court again directed a verdict of not guilty, which was returned and judgment was entered thereon. The Branch Appellate Court for the First District affirmed the judgment, and the record is again brought up by writ of error under a certificate of importance.

The bill of exceptions recites that plaintiff introduced evidence to sustain his declaration and defendant introduced evidence in opposition thereto, but the evidence is not preserved except so far as it relates to a release of the cause of action. The court certified that aside from the release the evidence was of such a character as required the submission of the issue to the jury, and the direction of the court was based upon the ground that the cause of action was barred by the release.

It is first contended that our decision on the former record that the evidence therein contained entitled the plaintiff to have the issue submitted to a jury is conclusive on that question when again presented upon this record. The principles of law declared in the former opinion were binding upon the trial court upon the last trial, but the question whether that court was right in directing a verdict depends upon the evidence then before the court upon which the ruling was based. Whether the action of the court in directing a verdict was right or wrong depends upon the validity of the release, and we cannot look outside of this record to determine that question. (*Chicago, Burlington and Quincy Railroad Co.* v. *Lee,* 87 Ill. 454.) The plaintiff, on his cross-

examination, admitted that he signed the release, and the defendant afterward offered it in evidence. It was on a printed form, with the words "Release of all claims" in capital letters and large type at the head, and beginning with the words "For all claims," in the same type, so that no person able to read could fail to see them in looking at the paper. It was under seal, and unless successfully impeached was a release of the cause of action. The plaintiff being called in rebuttal, testified that he was twenty-eight years old at the time of the accident; that he could read and write; that he did not read the paper before it was signed; that the general manager and attorney of the road were present when he signed it; that the attorney read it off fast in a mumbly kind of way and he did not understand it very well, and that he remembered about the amount of $280 that he was to get, and that was about all he remembered. He was then asked whether, at the time he signed the paper, he knew in any way he was settling with the company for the injury. An objection to that question was sustained, and his attorney then made the following offer of proof: "I offer to show that this man Hartley went down to Col. Wood's office at the direction of this superintendent. He told the superintendent who he was and he came down there for wages; not the superintendent,—the general manager, Wood,—and Wood and he then talked about this. He explained how the accident happened, and all about it, and Wood told him he didn't have any case against the company and they wouldn't give him anything on that account, but they would pay him his wages as a matter of charity, and give him a job; that he sent him to a doctor to find out how long it would be before he would be able to go to work, so that his wages could be estimated; that he went to a doctor and brought back to Col. Wood a letter from the doctor that he would be able to work in four months from the accident; that the sum of $70 was the amount of the average pay of switchmen a month; that Wood told the man they would pay him $280

for four months' wages, and then he (Wood) went into the other room and got Mr. Scrafford to write this thing up; that he brought it in there and Scrafford mumbled the thing over to him and told him to sign it; that he signed it, thinking it was a receipt of his wages, but nobody ever said anything about a release at any time or place."

The court ruled that evidence of what took place when the paper was signed was competent; that if the plaintiff was deceived into signing the paper without knowing what was in it, or if he was told that the paper was anything different from what it in fact was, or if there was any way by which he was tricked into signing it without looking at or reading it, he might tell the circumstances, and if the attorney wanted him to tell all that they said or did with the paper he might go on and tell it, but the offer of proof as made was refused.

In an action at law an instrument such as this cannot be impeached for fraud not inhering in the execution thereof but which only goes to the consideration. It is permissible to prove fraud touching the execution of the instrument, such as misreading it, the surreptitious substitution of one paper for another, or a trick or fraud in procuring the signature. If there is no fraud in securing the execution of the release it can only be avoided by a proceeding in equity. Accordingly, it is competent to show that the signature to a release was obtained by the false representation that it merely covered a claim for a month's wages; (*Illinois Central Railroad Co.* v. *Welch*, 52 Ill. 183;) that an illiterate woman, unable to read or write, was induced by her physician, during her illness, in the absence of any one to whom she could look for advice, to sign a release on the representation that it was a receipt to show what money expended for her benefit had been expended for; (*Eagle Packet Co.* v. *Defries*, 94 Ill. 598;) that one suffering great physical pain and laboring under the effect of opiates was induced by fraudulent practices to sign a release under the belief that he was only

214—6

signing a receipt for money; (*Chicago, Rock Island and Pacific Railway Co.* v. *Lewis,* 109 Ill. 120;) that a person unable to read or write signed a release not read to him, under the representation that the paper was for the pay-master to show where the money 'went; (*National Syrup Co.* v. *Carlson,* 155 Ill. 210;) that the execution of a paper was fraudulently obtained from one suffering severe pain, in ignorance of its contents and under the representation that it was necessary to have her name; (*Chicago City Railway Co.* v. *McClain,* 211 Ill. 589;) or that a release was signed without any intention to execute a release, but on account of fraudulent representations that it was merely a receipt for money paid to a physician. (*Chicago City Railway Co.* v. *Uhter,* 212 Ill. 174.) The law upon the whole subject was stated upon a full review of the authorities in *Papke* v. *Hammond Co.* 192 Ill. 631. In this case neither the evidence introduced nor that which was offered tended to show that the execution of the release was fraudulently obtained. There was no evidence tending to prove any misrepresentation or fraud as to the contents of the instrument, and no trick or device was employed to secure the signature or to prevent plaintiff from reading the release. The very nature and appearance of the instrument were such that a glance would show to any one who could read what its nature was. Even if the rule were different and fraud as to the nature or extent of the consideration could be proved, there was no evidence tending to show any misrepresentation as to the existence or non-existence of any fact or any matter of law. The trial court could not do otherwise than hold that the release was a bar to the cause of action.

The judgment is affirmed.          *Judgment affirmed.*