# John W. Donnelly, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 15,520.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside when there is a contrariety of evidence and the facts and circumstances by a fair and reasonable intendment will authorize the verdict notwithstanding it may appear to be against the strength and weight of the testimony.

2. EVIDENCE—*when of custom competent.* Notwithstanding the declaration did not allege the existence of the custom, held, that it was proper in an action for personal injuries to show a custom by which street cars and other vehicles gave right of way to fire department apparatus and employes when going to a fire.

3. EVIDENCE—*competency of adjudication of insanity.* Inquisitions of lunacy, as well as inquisitions of post mortem, and others, are admissible though not conclusive.

4. EVIDENCE—*what cross-examination of expert proper.* An expert witness may be cross-examined as to the basis of his opinion and as to whether the authorities do not lay down a different rule, and the like.

5. APPEALS AND ERRORS—*what essential to present on review defense of statute of limitations.* The defense of the statute of limitations cannot be relied· upon on review unless the assignments of error rely thereon.

6. INJURIES ACT—*when cause of action accrues.* The cause of action given by this statute does not accrue until death ensues and until death results the limitation period does not begin to run.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the HON. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909.· ˙Affirmed. Opinion filed October 3, 1911.

S. S. PAGE and WATSON J. FERRY, for appellant.

HENRY S. WILCOX, for appellee; CHARLES C. SPENCER and JESSE WILCOX, of counsel.

MR. JUSTICE CLARK delivered the opinion of the court.

This case is before this court a second time, and there have been two trials before the same judge in the court below. The opinion of this court on the prior appeal will be found reported in 131 Ill. App. 302.

The case arises out of a collision on March 29, 1897, between a hose carriage belonging to the City of Chicage, and an electric car of the appellant. The appellee's theory of the accident and statement of the manner in which it occurred is as follows:

"About nine o'clock in the evening of the injury to Thomas Wren, an alarm of fire was received at the engine house where he was stationed, from a point southwest of the said fire house: as soon as the alarm was received, the horses were hitched to the apparatus

and as they stood with their heads just out of the door, facing on Wentworth avenue, and with a bright light shining upon and from behind them, the south-bound car of the appellant came up and was standing on the track in front of the door of the fire house. Thereupon Lieutenant Vollman, standing in front of the door and within about twenty feet of the car whistled and 'hollered' as loudly as he could, and Lieutenant Stoltz also in front of the door and within the same distance from the car whistled with his fingers and 'hollered' in full sight of the motorman, for the purpose of warning him that the fire apparatus was about to come out on the street.

"It was the custom under such circumstances and under the circumstances that succeeded, for the street cars to stop still and give the fire apparatus the right of way on its way to the fire. But upon this occasion the south-bound car was started up by its motorman and continued south without stopping. Thereupon, the hose carriage with the deceased and Captain Tobin upon the driver's seat and Vollman and Stoltz on the rear step was driven out of the fire house and onto the north-bound or east track and then southward on said track, endeavoring and expecting to pass the said south-bound car, the gong on the hose cart and on the engine behind it being rung loudly enough to be heard two blocks, and the firemen shouting to the street car to let them pass. At Fifty-fifth street, which is a boulevard, the car, according to some witnesses, stopped, but started again immediately with the hose cart about twenty or twenty-five feet behind it. From Fifty-fifth street south the street was torn up for repairs from the outermost rails to the curb, there being a sharp drop of from 8 to 12 inches from the rail to the street, and the space occupied by the car tracks was the only safe place in the street for the fire apparatus to be driven at the necessary speed.

"The street car then proceeded on to the regular stop-

ping place on the north side of Fifty-seventh street, the hose cart following it closely all the way in the other tracks, and Captain Tobin, who was driving, endeavoring to get ahead of the south-bound car and ringing the gong, and the firemen 'hollering' to the crew of the car. The deceased, Thomas Wren, was the regular driver of the hose carriage and was driving the team at the time the hose carriage left the fire house and was proceeding south, but at some point on the road, Captain Tobin, who was his superior officer and sat on the driver's seat with him, having put on his own coat, and for the purpose of enabling Wren to put on his coat, as was usual, reached over and took the lines and drove the team from that time up till the time of the accident. As the south-bound car came to a stop at Fifty-seventh street, as aforesaid, the hose carriage was driven by Tobin even with and in front of the car, and Tobin in an endeavor to drive his horses and apparatus onto the south-bound track and in front of the south-bound car, which was then stationary, turned his horses onto, or partly onto the south-bound track.   Meanwhile the north-bound car was approaching from the south and with nothing to obstruct its view of the situation nor to prevent its motorman and conductor from hearing the fire gong and the shouting and the clattering of the horses' hoofs or from seeing the situation. As Captain Tobin turned the horses partly onto the south-bound track and partly in front of the south-bound car, the motorman started up the south-bound car again so that it became necessary for Tobin to save his horses from being struck by the car to swing them back onto the north-bound track again.   Meantime the north-bound car, instead of stopping, continued to run down upon the hose cart. Seeing this, Tobin endeavored to swing his horses into the torn up portion of the street east of the car track, but did not have time. The north-bound car came down upon the hose cart with force sufficient to break back its own iron dashboard and

controller, and drove the hose cart backwards and against the south-bound car.''

Plaintiff's intestate was thrown upon the ground and received an injury to his head. He continued to work for the City in the Fire Department for some time thereafter, but later on was held to be insane, and it is claimed by the appellee that the insanity was due to the injury received. It is also alleged to have been the cause of his death, that event occurring on May 7, 1900. Suit was brought on May 6, 1902. There was a verdict of $5,000, upon which judgment was entered.

Three grounds of error are alleged in appellant's brief: First, that the verdict is not justified by the evidence, being against the overwhelming weight of the evidence; second, that errors were made in the admission of improper and the exclusion of proper evidence; and third, that the jury was not properly instructed.

We have carefully examined the abstract of record and the arguments of counsel upon the proposition that the verdict is against the weight of the evidence. We find sharp conflict between the witnesses upon many material points. We do not feel called upon to refer to all of these points in this opinion, as we believe no good purpose could be subserved thereby. Extreme care in guarding the rights of the litigants in this proceeding is shown in the record to have been exercised by the learned trial judge, and we do not think the verdict so manifestly against the weight of the evidence that it should be set aside. The evidence of the appellee when considered by itself is, in our opinion, clearly sufficient to sustain the verdict. We are therefore governed by the often repeated rule that a verdict will not be set aside when there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize the verdict, notwithstanding it may appear to be against the strength and weight of the testimony. Chicago City Railway Co. v. McClain, 211 Ill. 589.

Objection was made upon the trial on the examination of one of the appellee's witnesses, Lieutenant Vollman, to his being allowed to testify as to a custom existing upon the city's streets whereby street cars and other vehicles gave the right of way to the fire department apparatus and employes when going to a fire. The objection was based upon the want of an allegation in the declaration of the existence of such a custom, and the objection was overruled. We think that the court's action was proper. Later on other witnesses testified as to this custom, over the objection of appellant that the evidence was incompetent, irrelevant and immaterial and that no proper foundation had been laid. These objections also were overruled, as was a motion to strike the testimony from the record. Even if these motions should have been sustained on the grounds stated, which we do not hold, we think that no injury was done the appellant by allowing the answers to stand. It is a matter of almost common knowledge that the right of way is by universal consent and almost of necessity given to the employes of the city who are taking the fire department appliances and men to a fire, and that gongs and bells are provided so as to warn people upon the streets of the danger.

Objection is also made to the reception of documentary evidence in connection with the adjudication of insanity of the decedent. We do not think that error was committed in this regard. The judicial determination in the case was by no means conclusive, but it was competent to be considered. The authorities seem to be uniform that inquisitions of lunacy, as well as inquisitions of post mortem and others, always have been admissible though not conclusive. United States Insurance Co. v. Vocke, 129 Ill. 557.

Some question is raised as to the accuracy of the statement included in the hypothetical question propounded to expert witnesses for the appellee. We think, however, that the facts assumed were fairly with-

in the range of the testimony. Nor do we find any error in the court's refusing to sustain an objection to a question propounded on cross-examination of one of the expert witnesses of the appellant. The question was within the rule laid down in Chicago Union Traction Co. v. Ertrachter, 228 Ill. 114, where it was held that an expert witness may be cross-examined as to the basis of his opinion and as to whether the authorities do not lay down a different doctrine, and the like.

Questions are raised also as to the giving of certain instructions at the request of the appellee, and the refusing to give certain instructions as tendered by the appellant. Thirty-three instructions were tendered by the appellant and given. These, with the ten tendered by the appellee and given, fully advised the jury as to their duty in the premises. We think no improper instruction was given on behalf of the appellee, and that the two instructions tendered by the appellant which were not given were properly refused.

A considerable portion of the reply brief of the appellant is given to a discussion of its claim that the present suit cannot be prosecuted as being barred by the Statute of Limitations, and our attention is again called to the matter by the petition for rehearing. No assignment of error is based specifically upon the proposition that the suit is barred by the Statute of Limitations. In the petition for rehearing it is insisted that assignments 1, 2, 3 and 13 are sufficient to warrant the court in passing upon the point mentioned. These assignments are:

"The verdict is against the evidence.

"The verdict is against the weight of the evidence.

"The verdict is against the law.

"The trial court erred in refusing to instruct the jury at the close of all the testimony in the case to find the appellant not guilty."

The contention is not specifically covered by any ground urged on the motion for a new trial, and we

think on the authority of Berry v. City of Chicago, 192 Ill. 154, that it is not raised by any assignment of error. In that case the court held:

"Every error must be specifically pointed out in the assignment of errors so clearly that from the showing error is manifest, and an error not assigned is not open to review,"
thus reaffirming what was said in Skakel v. People, 188 Ill. 291; Swift & Co. v. Fue, 167 Ill. 443; Gibler v. City of Mattoon, 167 Ill. 18.

Assuming, however, that error is well assigned, we think there is no merit in the contention.

Until the passage of the statute chapter 70 of the revised laws, compensation for causing death by wrongful act, neglect or default, was not allowed, the common law rule in this respect being in force in this state. This statute was passed in 1853. The first section is:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

The second section after reciting that the amount recovered shall be for the exclusive benefit of the widow and next of kin of the deceased, had, at the time the suit before us was brought, a provision that "every such action shall be commenced within two years after the death of such person." In the motion for rehearing the appellant urges upon us that inasmuch as it appears on the face of the declaration that more than two years elapsed from the time of the

alleged injury to the bringing of this action, and that between the time of the alleged injury and Wren's death more than two years elapsed, his right of recovery for damages for such injury had been defeated by the operation of the limitation statute, and hence the right of his personal representative to recover was also defeated. In other words, their contention is that if a person is injured through the negligence of another and death does not ensue for two years after the date of the accident, there can be no recovery by the personal representative of the deceased. We do not so construe the statute. The language is, "Whenever the death of a person shall be caused by the wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then," etc.

In our opinion, this language refers to the right of the injured person as it existed immediately after the accident and not to the situation as it would exist more than two years after the accident, when the right of the injured party had expired by the limitation. The action for the death is different from the action by the injured man himself, in this, that two things must exist; the injury must have been sustained because of the neglect or default of the defendant, and the person injured must have died. It is not until death occurs that the right of action in the widow and next of kin through the administrator exists.

We hold, therefore, that the only limitation on the right of the personal representative of the injured person to sue is that contained in the act which gives the right to the personal representative to sue, namely two years (since July 1, 1903, one year) from the date of the death of the person injured. In other words, as stated in Prouty v. City of Chicago, 250 Ill.

223, the right of action is statutory and not a survival of decedent's right of action for personal injury.

It follows from what has been said that the judgment must be affirmed.

*Affirmed.*