## Mrs. James R. Monahan, Plaintiff in Error, v. St. Paul Coal Company, Defendant in Error.

### Gen. No. 5,915.

1. RELEASE, § 8*—*when not impeachable in action at law for fraud.* A release of a cause of action cannot be impeached in an action at law for fraud which does not inhere in its execution, but which goes merely to the consideration, since equity only can grant relief in such a case.

2. RELEASE, § 8*—*when impeachable in action at law.* A release of liability for the death of the plaintiff's husband can be impeached in an action at law, where she was misled by the defendant into executing it, believing that it was a contract whereby she would receive a further sum in the event that other widows were paid a greater amount for the death of their husbands in a common disaster, since the fraud inhered in the execution of the instrument.

3. PLEADING, § 225*—*effect of pleading over.* Where the plaintiff, on the sustaining of a demurrer to his replication, obtains leave to and files an amended replication without asking leave to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

plead double, the original replication is abandoned, and its sufficiency is not open to review on appeal.

4. PLEADING, § 122*—*what replication should contain.* Explanations as to discrepancies between an original and an amended replication are not properly a part of the latter pleading, and no issue can be made thereon.

5. RELEASE, § 8*—*when receipt of money not ratification of release obtained by fraud.* The receipt of money under a release obtained by fraud inhering in its execution is not a ratification thereof, where the defendant retained the instrument and the plaintiff was not aware of its true nature until pleaded as a defense to an action at law.

6. RELEASE, § 8*—*when person not estopped by receipt of money under release obtained by fraud.* The receipt of money under a release which was obtained by fraud inhering in its execution does not estop the defrauded party, where the defendant retained the instrument and the plaintiff had no knowledge of its true nature until relied upon by the defendant as a défense to an action at law.

7. RELEASE, § 12*—*when return of money not prerequisite to action.* Money received by the plaintiff under a release which was obtained by fraud inhering in its execution need not be returned before bringing an action at law, where he was not aware of the true nature of the instrument until relied on by the defendant as a defense.

8. RELEASE, § 9*—*when failure to read not negligence.* That a person was negligent as a matter of law, in signing a release without procuring his eyeglasses and learning its contents, *held* not shown by a replication, where the true nature of the instrument was misrepresented to him.

Error to the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed March 9, 1915.

J. L. MURPHY, for plaintiff in error.

DUNCAN, DOYLE & O'CONOR, for defendant in error.

PER CURIAM.

The husband of plaintiff in error was killed in what is known as the Cherry Mine disaster, in which many men lost their lives. She brought this action of trespass on the case against the defendant in error to

*See *Illinois Notes Digest,* Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

recover for his death, and filed a declaration setting out sufficient grounds for recovery under our Mines and Miners Act. The defendant pleaded the general issue and a plea of release, setting out *in haec verba* a writing under seal signed by the plaintiff, in which it is recited that in consideration of $1,620 she compromises and releases to the defendant in error all liability by reason of the death and circumstances surrounding the death of her husband. The plaintiff replied that the defendant procured the writing pleaded by fraud and deceit, averring in her amended replication that she did not have her glasses present and could not read the paper and an attorney for the defendant read it to her, and read it to her as providing that this was a receipt for $1,800 to be then paid her on her claim for the death of her husband, and that if any other widow whose husband was killed in the same disaster was paid by the defendant upon a settlement a greater sum than $1,800, plaintiff should be paid enough more to make her compensation equal to the highest sum so paid to any other widow, and if no greater sum than $1,800 was paid as a settlement to any other of said widows, then this document would operate as a release of plaintiff's claim, and that this instrument was intentionally misread to her in order to trick her and to cause her to affix her signature to said document, and that she relied on said attorney and did not know that it contained the supposed release, and signed it in reliance on said representations, and would not have signed it if she had known what it contained. This is followed by averments that other widows had been settled with for as high as $4,500. We interpret this language as meaning that it was read and represented to her that this instrument was at present only a receipt for $1,800, and would not operate as a release until it was ascertained that no other widow was settled with for over $1,800, or until she was paid as much as the highest sum paid in set-

tlement to any other widow; in other words, that this was not intended to operate as a release at the time it was executed.

The court sustained a general demurrer to the replication, and judgment for the defendant followed, to review which this writ of error is prosecuted.

The release as pleaded was a bar to plaintiff's action. The question is whether the facts replied remove that bar. No question of the right of recovery under the terms of the release, either as written or as intended or supposed to be written, is involved. Even if the release be reformed by an appropriate independent proceeding in equity, there can be no recovery based on the obligations there imposed in an action of tort.

The inquiry is whether there was fraud in the execution of the instrument itself. If plaintiff knew she was signing this paper and knew its contents (there being no question as to her mental capacity), she cannot be heard in a court of law to deny its effect on the ground that she did not understand it because of false representations as to its meaning, or that she was induced to sign it by false representations as to collateral matters. Her remedy, if any, in that event is in an independent action in a court of equity.

The execution of an instrument is deemed to be procured by fraud when the signature is obtained by misreading, surreptitious substituting one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give. Some fraud or imposition must be practiced upon the party to obtain his signature. To permit proof to be introduced in a court of law as to the practice of fraud in the procurement of a release, the fraud must consist in false representations as to the character of the instrument itself which was signed. The authorities are reviewed and conclusions reached as above

stated in *Papke v. G. H. Hammond Co.*, 192 Ill. 631; and the court in *Hartley v. Chicago & A. R. Co.*, 214 Ill. 78, said: ''In an action at law an instrument such as this cannot be impeached for fraud not inhering in the execution thereof but which only goes to the consideration. It is permissible to prove fraud touching the execution of the instrument, such as misreading it, the surreptitious substitution of one paper for another, or a trick or fraud in procuring the signature. If there is no fraud in securing the execution of the release it can only be avoided by a proceeding in equity. Accordingly, it is competent to show that the signature to a release was obtained by the false representation that it merely covered a claim for a month's wages; (*Illinois Central Railroad Co. v. Welch*, 52 Ill. 183;) that an illiterate woman, unable to read or write, was induced by her physician, during her illness, in the absence of any one to whom she could look for advice, to sign a release on the representation that it was a receipt to show what money expended for her benefit had been expended for; (*Eagle Packet Co. v. Defries*, 94 Ill. 598;) that one suffering great physical pain and laboring under the effect of opiates was induced by fraudulent practices to sign a release under the belief that he was only signing a receipt for money; (*Chicago, Rock Island and Pacific Railway Co. v. Lewis*, 109 Ill. 120;) that a person unable to read or write signed a release not read to him, under the representation that the paper was for the paymaster to show where the money went; (*National Syrup Co. v. Carlson*, 155 Ill. 210;) that the execution of a paper was fraudulently obtained from one suffering severe pain, in ignorance of its contents and under the representation that it was necessary to have her name; (*Chicago City Railway Co. v. McClain*, 211 Ill. 589;) or that a release was signed without any intention to execute a release, but on account of fraudulent

representations that it was merely a receipt for money paid to a physician. (*Chicago City Railway Co. v. Uhter*, 212 Ill. 174.) The law upon the whole subject was stated upon a full review of the authorities in *Papke v. Hammond Co.*, 192 Ill. 631." See also, *Babcock v. Farwell*, 245 Ill. 14; *Turner v. Manufacturer's & Consumer's Coal Co.*, 254 Ill. 187; and *Kelly v. Aurora, E. & C. R. Co.*, 168 Ill. App. 386.

In many of the cases it is said, in substance, that in suits at law the instrument cannot be impeached for fraud not inhering in the execution thereof but which only goes to the consideration. This is not a case where only the consideration expressed in the instrument was misread to the signer, but she pleads that she was misled to believe that she was signing a contract or agreement that she should have a further sum on a contingency, and that she did not know that she was executing a present release of her cause of action. As we interpret the amended replication, it presents an answer to the plea which can be tried in a court of law.

Appellant assigns as error the action of the court in sustaining the demurrer to her original replication. She asked and obtained leave to amend it, and afterwards asked and obtained leave to file the amended replication here discussed. She did not ask leave to reply double and therefore could only have one replication. She abandoned her original replication when she filed the amended replication, and the sufficiency of the former is not before us. About one page of the amended replication is devoted to an explanation of the discrepancies between that and the original replication. That explanation has no proper place in the replication and no issue should be permitted to be formed thereon.

It is said that the plaintiff ratified the settlement made by her by receiving the $1,620, and afterwards collecting the $180 from the defendant and retaining

the whole amount. If she did this, after knowing the contents of the paper that she signed, we will assume she should be held to have ratified her agreement, notwithstanding that she may have been induced by fraud to execute it. But it is alleged in her replication that she delivered the paper to the defendant's agent and did not know of its contents when she received the $1,620. It also appears from the replication by fair intendment that she did not know the contents of the paper until it was plead by the defendant in this suit.. If her attorney had knowledge of its contents when he collected the $180, that fact is not stated in the record and cannot be inferred from anything there stated. She is neither estopped nor required to return the money, if she received it without knowing the contents of the paper and was fraudulently induced to sign it. *Indiana, D. & W. Ry. Co. v. Fowler*, 201 Ill. 152.

The remaining question is whether it can be said, as matter of law, from a reading of the replication, that the plaintiff was guilty of negligence in not knowing the contents of the paper she signed. We are of the opinion that we are not warranted in saying, as matter of law, that plaintiff was so negligent in not procuring glasses and reading the paper or taking some other means of ascertaining its contents, as to preclude her defense set up in her replication. *Taylor v. Atchison*, 54 Ill. 196; *Sims v. Bice*, 67 Ill. 88.

The trial court erred in sustaining the demurrer to the last replication. The judgment must be reversed and the cause remanded.

*Reversed and remanded.*