(No. 12128.—Judgment affirmed.)

MATT KUSTURIN, Defendant in Error, *vs.* THE CHICAGO AND ALTON RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed February 20, 1919—Rehearing denied April 2, 1919.*

1. RAILROADS—*work of repairing inter-State railroad is part of inter-State commerce.* The work of repairing the track of an inter-State railroad is so connected with inter-State commerce as to be a part thereof.

2. SAME—*when an employee engaged in removing old rails is employed in inter-State commerce.* Where the track of an inter-State railroad is being repaired by replacing old rails with new ones, an employee engaged in loading a flat-car with old rails which were lying beside the track is employed in inter-State commerce, notwithstanding the fact that if the old rails remained where they were they would not interfere with the use of the track in inter-State commerce.

3. NEGLIGENCE—*under the Federal Employers' Liability act employee must show he was engaged in inter-State commerce.* Under the Federal Employers' Liability act it is incumbent on the employee to show that he was engaged in inter-State commerce when injured, regardless of the fact that there is no showing in the record that he was engaged in intra-State commerce.

4. SAME—*negligence is basis for compensation under Federal Employers' Liability act.* The Federal Employers' Liability act proceeds on the principle which regards negligence as the basis of the duty to make compensation and excludes the existence of such duty in the absence of negligence.

5. SAME—*when the Supreme Court will not disturb verdict on question of neligence.* In a suit under the Federal Employers' Liability act the question of negligence is one of fact to be left to the jury under proper instructions from the court, and unless, upon a review of the evidence, the Supreme Court is able to say that there is no evidence fairly tending to show negligence the verdict will not be disturbed.

6. SAME—*whether plaintiff executed a release with knowledge of its meaning is a question of fact.* In a suit under the Federal Employers' Liability act the question whether the plaintiff, who could not talk or read English, executed a release with knowledge of its meaning, by which he released his employer from all liability, is one of fact for the jury, under the evidence.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. ARTHUR W. DESELM, Judge, presiding.

O'DONNELL, DONOVAN & BRAY, (WINSTON, STRAWN & SHAW, of counsel,) for plaintiff in error.

SNAPP, HEISE & SNAPP, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a writ of error to the Appellate Court for the Second District to review a judgment affirming a judgment of the circuit court of Will county on appeal. The trial court entered judgment in favor of the defendant in error after requiring a *remittitur* of $3321.80 from the amount of $5821.80.

The declaration consists of two counts. Both counts allege that the plaintiff in error is an inter-State carrier and that the defendant in error was employed by it as a section hand, with other servants, in repairing and maintaining the

track and roadway by removing old and defective steel rails from the track and roadway and replacing the same with other steel rails. The negligence charged in the first count is that other servants and employees carelessly, negligently and wrongfully caused or permitted a certain heavy piece of steel, commonly called a rail, to strike and fall upon and against the left foot of the defendant in error with great force and violence. The negligence charged in the second count is that while plaintiff in error's servants were loading old rails upon a flat-car, the foreman or vice-principal of the plaintiff in error carelessly, negligently and wrongfully caused, directed or permitted the flat-car to be loaded with rails in such a manner that by, through and in consequence thereof a certain heavy piece of steel, commonly called a rail, fell and struck upon and against the left foot of the defendant in error with great force and violence. The plaintiff in error filed a plea of the general issue, and also a special plea denying that it was engaged in inter-State commerce or that the defendant in error at the time of his injury was engaged in inter-State commerce.

The accident happened near Romeo on November 3, 1915. At that point there were four tracks,—two main tracks and two side-tracks, the main tracks being in the center. The railroad runs practically north and south. The two outside tracks are known as passing tracks. The space between the main and passing tracks is about eight and one-half feet. The south-bound passing track is about five inches lower than the south-bound main track. Both tracks are ballasted, the ballast extending about two feet beyond the ends of the ties and sloping gradually to the outside of the passing track. During the two weeks preceding the accident the gang in which the defendant in error worked were engaged in taking out the old rails of the main track, replacing them with new steel, re-setting the ties and surfacing the road-bed. During the forenoon of the day of the accident defendant in error was engaged in tamping the

ties and loading the old rails onto a flat-car. After noon, when he was hurt, he was helping load onto a flat-car some of the old rails that lay in the space between the main and passing tracks. This flat-car stood on the south-bound passing track. The particular rails that were being loaded had been lying there about two weeks, opposite the places where they had been taken from the track. There is no evidence that they in any way interfered with the operation of the trains or as to what was to be done with them after they were loaded on the car. As the old rails were loaded this flat-car was "pinched" along so as to be opposite the next rails to be loaded. The floor of the car was about four feet above the rails and about eight feet wide. The rails were what are called 80-pound rails but at the time of the accident weighed about 75 pounds to the yard. They were thirty feet in length and weighed about 750 pounds each. In loading a rail the men took their positions side by side along the rail and at the signal "Up," given by one of the foremen, picked up the rail. At the signal "High" they raised the rail above their heads, and at the signal "Over" they pushed or threw the rail onto the car. At the time of the accident these signals were given and one end of the rail was thrown too soon, causing it to fall. Defendant in error testified that he tried to jump back with the others when warned of the danger by shouts from all of the men, and in doing so caught his heel on a tie which protruded from the ballast and the rail fell on his instep and crushed it badly.

It is contended by plaintiff in error that the defendant in error at the time of his injury was not employed in inter-State commerce; that the plaintiff in error was not negligent; that the defendant in error assumed the risk; that the verdict is the result of passion and prejudice; that the trial court erred in rulings on the evidence and in instructing the jury, and that the release executed by the defendant in error is a bar to any recovery.

The action is brought under the Federal Employer's Liability act. The first count of the declaration is based on the averments that both defendant in error and plaintiff in error were at the time of the injury engaged in inter-State commerce, and that the injury was received through the negligence of fellow-servants employed by plaintiff in error. The second count, while charging that both were engaged in inter-State commerce, further charges that the injury was received through the negligence of a vice-principal of plaintiff in error, to-wit, the foreman of the section gang. The record, however, contains no evidence to establish the negligence of the foreman, and the right of recovery of the defendant in error therefore depends in the first instance upon whether or not both employer and employee were engaged in inter-State commerce at the time of the injury. It was stipulated that the employer was so engaged, and the first question presented is whether or not the defendant in error was so engaged at the time of the injury. It is urged by plaintiff in error that the work of · removing old rails from the right of way was not an act in the work of repairing the road or road-bed used in inter-State commerce and that such work was not an act necessarily incident to such repair, and that therefore defendant in error, while so employed, was not engaged in inter-State commerce.

The law governing the facts of the case considered often presents a close question in this class of cases and its application to such facts by courts at times seems subtle, but having in mind that Congress has no power to deal with the question except under its power to regulate inter-State commerce, it will be seen that precision in applying the provisions of the Federal Employer's Liability act is perhaps justifiable. As this is a Federal question, the views held by the Federal court of last resort are therefore controlling. That court, in the case of *New York Central and Hudson River Railroad Co.* v. *Carr*, 238 U. S. 260,

states the doctrine underlying this class of cases as follows:
"Each case must be decided in the light of the particular
facts with a view of determining whether at the time of the
injury the employee is engaged in inter-State business or
in an act which is so directly and immediately connected
with such business as substantially to form a part or a nec-
essary incident thereof." So in the case of *Chicago, Bur-
lington and Quincy Railroad Co.* v. *Harrington,* 241 U. S.
177, the rule is declared to be: "It is not important whether
he had previously been engaged in inter-State commerce,
or that it was contemplated that he would be so engaged
after his immediate duty had been performed. * * * The
true test of employment in such commerce in the sense in-
tended is, was the employee at the time of the injury en-
gaged in inter-State transportation or in work so closely
related to it as to be practically a part of it?"—citing *Shanks*
v. *Delaware, Lackawanna and Western Railroad Co.* 239
U. S. 556.

The work covered in repairing the track of an inter-
State road has been held by the Federal court to be a part
of inter-State commerce. In *Pederson* v. *Delaware, Lack-
awanna and Western Railroad Co.* 229 U. S. 146, the court
said: "Tracks are as indispensable to inter-State commerce
as engines and cars, and sound economic reasons unite with
the settled rules of law in demanding that these instrumen-
talities be kept in repair. We are of the opinion that the
work of keeping such instrumentalities in a proper state
of repair is so closely related to such commerce as to be
a part thereof." This being the rule in the Federal court,
the question then arises, was the work in which defendant
in error was engaged at the time of his injury so directly
and immediately connected with the repairing of the track
of the plaintiff in error or so closely related thereto as to
practically form a part of or a necessary incident thereof?

The facts in the *Pederson case, supra,* differ somewhat
from the facts in this case, in that in that case the employee

was injured while carrying bolts to be used in the work of repairing a bridge which formed part of an inter-State road, while in the present case the rails which were being loaded had been taken out of the track and the evidence does not disclose the purpose for which they were being removed from the right of way. The courts of the various States have somewhat differently applied the rules here referred to, to the facts under consideration in the cases before them. The Supreme Court of Appeals of Kentucky, in the case of *Illinois Central Railway Co.* v. *Kelley,* 167 Ky. 745, where a track laborer was injured while loading steel rails onto a flat-car, which rails had been removed from the track and lay on the right of way, held that the employee was not at that time employed in inter-State commerce, for the reason that the rails lying along the side of the track could not be regarded as an interference with the road's use of the track or its business as a common carrier and there was nothing to show the intention to use the rails elsewhere. The court there says: "In view of the situation we are unable to see how the later work of gathering up these old rails for the purpose of storing them elsewhere, or perhaps selling them as scrap steel, can in this sense be considered as a repairing of the track or as necessary to appellant's engaging in inter-State commerce." To the same effect is the case of *Cincinnati, New Orleans and Texas Pacific Railway Co.* v. *Hansford,* 173 Ky. 126, decided by the court under the same rule. The rule was adopted by the Supreme Court of Utah in the case of *Perez* v. *Union Pacific Railway Co.* 173 Pac. Rep. 236. In that case the employee was one of a certain gang engaged in repairing a track. Some of the men were engaged in taking up old rails and putting in new ones and while so engaged laid the old rails along the side of the track on the right of way. Plaintiff was a member of the gang engaged in removing these old rails from the point where they had been laid, placing them on a push-car and conveying them

to a tool house. The court held he was not employed, at the time of the injury, in inter-State commerce, and held that the crucial test in such case is, "Was he engaged in the inter-State business at the particular time of injury?" That court also held that the employee was not then so engaged for the reason that he was not at the time engaged in repairing the track, saying: "The old rails might have lain on the side of the track for an indefinite time without inconvenience to inter-State travel or transportation." In the case of *Hudson and Manhattan Railroad Co.* v. *Iorio,* 239 Fed. Rep. 855, decided by the United States court of appeals for the second district, it was held that Iorio, who was a trackman employed by defendant and at the time of his injury was assisting in putting new rails into a pit near the tracks where such new rails were stored against the time when they might be required for track repair, was not at the time of his injury engaged in inter-State commerce, for the reason that the rails which he was engaged in storing against a use that was certainly not imminent and might never occur, were not at the moment engaged in or practically part of inter-State commerce, "for there commerce was going on without any present assistance either from Iorio or the rails on which he was working or the men who were working with him. We therefore hold that the actual employment or use, at the moment of the injury, of the thing upon which the person injured was working is the test of the applicability of the statute under the circumstances such as shown here. By that test plaintiff below was not practically engaged in or a part of inter-State commerce when he was hurt." On the other hand, the Supreme Court of Minnesota, in the case of *Cherpeski* v. *Great Northern Railway Co.* 128 Minn. 360, held that where an employee was injured while handling old rails that had been removed from the track and loaded on a push-car and removed from the place where new ones were being installed he was engaged in inter-State commerce, for the

reason that the removal of old rails was a part of the whole task of repairing the road. The court there says: "The repair of the road was a work of inter-State commerce. That it was found convenient to put the old rails on a flat-car in disposing of them does not make the work any nearer the part of intra-State commerce work." So in the case of *Columbia and Puget· Sound Railroad Co.* v. *Sauter,* 223 Fed. Rep. 604, an employee of a railroad company who was killed while removing trash and drift so that a trestle could be erected for the passage of trains across a river and which was later to be used for rebuilding an old bridge was held to have been engaged in inter-State commerce. In the case of *Glunt* v. *Pennsylvania Railroad Co.* 249 Pa. 522, where an employee, while engaged in installing a new signal system, was struck by a passenger train passing on a track other than the one on which he was working, it was held he was engaged in inter-State commerce though the signal service was not in operation or use, and that the fact that he had ceased his activities and stepped back from his place of work would not take him out of inter-State commerce. In the case of *Texas and Pacific Railroad Co.* v. *White,* 177 S. W. Rep. 1185, a section foreman was injured while returning to his home on a hand-car after having repaired a broken joint in the rail, while helping to lift the car from the track so that a freight train could pass, and he was held to be engaged in inter-State commerce at the time of the accident. The court said: "The return trip to Lorraine, his headquarters, was as much an incident to and a part of work of repairing broken rails as was the outgoing trip to perform that service."

It is urged on behalf of the defendant in error that the removal of the old rails in this case was part of the repairing of the track or the replacing of new rails, and that the rule is that in determining whether or not the employment at the time of the injury was inter-State or intra-State in

its character, the operation as a whole, as distinguished from momentary employment, is to be considered, drawing the line only where one task is finished and the other is begun, and in support thereof *Erie Railroad Co.* v. *Winfield,* 244 U. S. 170, is cited. In that case deceased was an employee in charge of a switch engine in the defendant's yard at Croxton, New Jersey, and was engaged in switching freight cars about the yards. Some were inter-State and others were intra-State cars. At the close of his day's work he took his engine to the place where it was to remain for the night and started to leave the yard, and while passing over one of the tracks was struck by an engine and received injuries from which he died. He was held to have been engaged in inter-State commerce. The court says: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. (*North Carolina Railroad Co.* v. *Zachary,* 232 U. S. 248.) Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than the other. His day's work was in both inter-State and intra-State commerce, and so, when he was leaving the yard at the time of his injury, his employment was in both. That he was employed in inter-State commerce is therefore plain, and that his employment also extended to intra-State commerce is for the present purpose of no importance."

It will thus be seen from this late case that the Federal court took the view that an employee is within the Federal Employer's Liability act if the employment in which he is engaged at the time of his injury is an incident to inter-State commerce, even though it might be likewise an incident to intra-State commerce. In the case at bar the scope of the employment of the defendant in error was that of repairing tracks. Such repair work is, as we have seen, so connected with inter-State commerce as to be a part there-

of. The work of loading these old rails, while not the actual work of bolting in new rails, was yet a part of the cleaning up process made necessary by putting in new rails. This work could not be said to in any way be an incident to intra-State commerce. This case is therefore to be distinguished from those cases where the employment is changed from work which is a part of inter-State commerce to that which is a part of intra-State commerce. There is nothing in the record to show that the employment of the defendant in error was in intra-State commerce, and while under the Federal Employer's act it is incumbent on the employee to show that he was engaged in inter-State commerce regardless of the fact that he may not have been engaged in intra-State commerce, yet such fact is of assistance in determining whether he was, in fact, still engaged in inter-State commerce or had completed such employment and had taken up employment of a different character. In this case the one operation connected with inter-State commerce was that of repairing the track, and if the removal of these old rails was a part of such repair work then the defendant in error was engaged in inter-State commerce at the time of his injury. It appears from the evidence that for two weeks they had been taking out these old rails and replacing them with new ones and tamping down the road-bed; that the defendant in error was engaged in tamping the road-bed and loading these rails on the morning of his injury; that after noon his work was confined, up to the time of his injury, to the loading of the old rails. We are of the opinion that the removal of such old rails was a part of the general work of repairing the track. The fact that if those old rails remained on the right of way they would not interfere with the use of the track in inter-State commerce is not controlling in determining the question whether the work of removing them was practically a part of the repairing of the road. As we view the matter, the removal of these old rails was an in-

cident to such repairing and necessary to a proper up-keep of the track. To hold that such work was not a part of the work of repairing the track would be analogous to holding that while the building of a scaffold which surrounds a house under construction is a necessary part of the work of construction the removal of such scaffold when the house is built is not. A house surrounded by a scaffold could, no doubt, be used without such scaffold being taken down, but no one would contend that it was not properly a part of the work of completing such house to remove the scaffold when its presence was no longer necessary. So in the repairing of the track, the removal of the old rails is analogous to the removing of the tools used in making such repairs or the removal of the hand-car on which the materials were conveyed to the place where the repair work was done. It was within the scope of the work necessary to keep the track and road-bed in that condition which good railroading demands, whether such railroading be inter-State or intra-State. Had the injury to defendant in error occurred during a single act of removing an old rail from its place in the road-bed onto the flat-car, no one would contend that the placing of that rail on the car was not a part of the act of repairing the road, and we believe that to split the scope of employment in such a case by holding that the work of removing the old rails, though in fact but a continuation of the work of putting new rails into the track, was nevertheless not a part of such repair, would constitute an unwarranted refinement of reasoning not contemplated by the framers of the act nor by the constitution by which said act is limited and would work an unjustifiable hardship. We are therefore of the opinion that defendant in error at the time of his injury was engaged in inter-State commerce and therefore came within the purview of the act.

It is also urged by plaintiff in error that there was no evidence tending to establish negligence on its part. The rule established by the Federal courts is, that the Federal

act proceeds on the principle which regards negligence as the basis of the duty to make compensation and excludes the existence of such duty in the absence of such negligence. (*Erie Railroad Co.* v. *Winfield, supra.*) The question of negligence was therefore one of fact, to be left to the jury under proper instructions from the court, and unless, upon a review of the evidence, this court is able to say that there was no evidence fairly tending to show negligence we will not disturb the verdict. The evidence in the record fairly tends to show that defendant in error's injury was due to negligence on the part of his co-employees in throwing the rail upon the flat-car, and the jury were justified in so finding.

It is also contended on the part of the plaintiff in error that defendant in error assumed the risk of injury from fellow-servants. Under the Federal Employer's Liability act the fellow-servant doctrine is no longer available as a defense, and if his injury was caused by the negligence of other members of the gang in loading rails he did not under the facts in this case assume the risk of such negligence. (*Devine* v. *Chicago, Rock Island and Pacific Railway Co.* 266 Ill. 248.) In the recent case of *Boldt* v. *Pennsylvania Railroad Co.* 245 U. S. 441, the United States Supreme Court said: "In cases within the purview of the statute the carrier is no longer shielded by the fellow-servant rule but must answer for an employee's negligence as well as for that of an officer or agent." While under the Federal act an employee assumes the ordinary risks of his employment unless there be some violation of a Federal law for the safety of employees, the risk arising out of the negligence of a fellow-servant was not assumed by virtue of that act under the facts in this case. *Boldt* v. *Pennsylvania Railroad Co. supra.*

It is also urged that defendant in error executed a release which is a bar to any further recovery. If defendant in error executed such release with knowledge of its mean-

ing such release will bar his recovery in an action at law. (*Hartley* v. *Chicago and Alton Railroad Co.* 214 Ill. 78; *Momence Stone Co.* v. *Turrell*, 205 id. 515.) The evidence shows that defendant in error was Croatian by birth; that he spoke and understood the English language very imperfectly and could not read or write it; that when he had been in the hospital about fourteen weeks the claim agent of the plaintiff in error, who spoke English only, visited him in company with an interpreter employed by said claim agent who spoke the Austrian language, of which the Croatian language was a dialect or to which it was very similar. The plaintiff in error's claim agent secured the signature to an instrument releasing plaintiff in error from all liability both under the Workmen's Compensation act and the Federal Employer's Liability act for the sum of $70. The release and receipt for the said sum were in the English language. Defendant in error testified that he could not read the release; that they told him this was a payment of half wages under the Compensation law; that he worked under the Compensation law elsewhere and that he did not know that he was releasing his cause of action. The interpreter also testified that he told defendant in error that this paper was payment to him under the Compensation act and that it was offered as such payment for the fourteen weeks since the injury. Whether or not defendant in error, who could not talk or read English, signed this release with a knowledge of its meaning was a question for the jury, and we cannot say that they were not justified in finding that he did not have such knowledge.

Objection is raised to certain instructions. We have, however, examined those instructions together with the entire series and find no reversible error.

There being no reversible error the judgment of the Appellate Court will be affirmed.    *Judgment affirmed.*