THE MOMENCE STONE COMPANY

*v.*

FRANK TURRELL.

Opinion filed December 16, 1903.

1. TRIAL—*when court should refuse to take case from jury.* An action by a servant for personal injury is properly left to the jury under evidence tending to show that the place where the servant was sent to work was not reasonably safe; that the master, in the exercise of ordinary care, would have had knowledge of such condition, and that the servant did not know thereof and did not have an equal opportunity with the master to learn the facts.

2. MASTER AND SERVANT—*when master should inspect tramway for defects.* Where the master has supervised the changing of the track of a tramway leading to a stone-crusher, and knows that the car sent over the track to test it has once been derailed and once turned over at the same point, it is his duty to inspect the tramway at that point and notify his servant of its condition before sending him to put the car on the track.

3. INSTRUCTIONS—*when instruction upon subject of release is erroneous.* An instruction telling the jury that if a certain release of damages signed by the plaintiff "was his act and deed" then it was unnecessary to determine the extent of his injury or the amount of his damages, and which assumes that the parties obtaining the release were acting for the defendant, which was a point in controversy, is properly refused.

*Momence Stone Co.* v. *Turrell,* 106 Ill. App. 160, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. JOHN SMALL, Judge, presiding.

This is an action of trespass on the case for personal injuries, commenced in the circuit court of Kankakee county by Frank Turrell, appellee, against the Momence Stone Company, appellant, where, upon a trial before a jury, appellee was awarded damages in the sum of $1200. A motion for a new trial was overruled, judgment was entered on the verdict, and appellant appealed to the

Appellate Court for the Second District, where the judgment of the circuit court was affirmed. This appeal is from that judgment of affirmance.

The errors relied upon by appellant for a reversal in this court are, that there is no evidence tending to prove a cause of action against appellant, and that the trial court erred in refusing appellant's fourteenth instruction.

The first count of the declaration charges that the plaintiff was employed by the defendant to break stone, and that while engaged in that work the defendant negligently ordered the plaintiff to go upon a railway track and replace a car that had been derailed; that the defendant negligently and wrongfully allowed said track to be in an unsafe condition, in this: that the rails thereof were bent and worn and the ties loose and broken, and the rails too close together to allow the cars to pass over and upon them; that after replacing said car upon said track, and while exercising due care, the said car fell from the track upon the plaintiff because of the defective condition of the track, permanently injuring the plaintiff. The second count differs from the first in that it charges that the car was drawn along the track by means of a cable controlled by machinery operated by persons who were not fellow-servants of the plaintiff; that the defendant negligently permitted the cable to become loose and give, causing the car to move, lose its balance and fall from the track upon the plaintiff, causing the injuries. The third count charges that the manager of the defendant negligently ordered the plaintiff to go upon the track and replace the car, and that while obeying such order the cable was loosened, causing the car to start and fall from the track upon the plaintiff. The other four counts charge that the plaintiff was ignorant of the dangers attending the work which he was ordered to do, and that it became the duty of the defendant to warn him of such dangers, and that it was negligent in not doing so.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant entered a motion to exclude the evidence and to instruct the jury to find a verdict for the defendant, and also submitted to the court an instruction directing the jury to find the defendant not guilty. The motion was overruled and the instruction refused in each instance.

The evidence tends to prove the following facts: The Momence Stone Company is a corporation, engaged in excavating and crushing stone at Momence, Illinois. At this place it has a stone quarry, and also a building in which the stone is crushed. The quarry and the house in which the crushing is done, referred to as the "crusher," are connected by a narrow-gauge railway track, over which are run small cars which carry the stone from the quarry to the crusher and over which the empty cars are returned to the quarry. Leading from the quarry to the crusher is an incline for a distance of from seventy-five to one hundred feet, the angle of which is about forty-five degrees. When a car is loaded at the quarry it passes down a slope to the foot or heel of this incline, where a cable is fastened to the front of the car, and it is drawn up the incline and to the crusher by means of this cable, which is operated by machinery in the crusher. Because of the continual excavation of stone in the quarry this track is shifted, lowered and changed on this incline and in the quarry every two or three days, and sometimes oftener. The men working at the quarry make these changes when ordered so to do by the manager. The plaintiff was injured December 16, 1899, at this quarry, where he had been employed about a month, by a car tipping or falling off the track, on the incline above referred to, upon him. His duty while at the quarry consisted in doing any kind of work which was to be done there. A day or two before the injury the men were ordered to change the track. The plaintiff assisted in this

work but did not assist in any of the work above the heel of the incline. His testimony is, that he did not work at all on or around the incline; that his work in changing the track on this occasion was all done out in the field. The testimony further shows that during the laying of the track on the incline, either Beale, the manager of appellant, or Groves, its foreman, was present all the time. The re-laying of the track was completed about five minutes before noon on the day of the injury, at which time Beale ordered the men to load a car and run it over this track to test the track. From the quarry, where the cars were loaded, to the heel of the incline, it appears there was a slope, so that a car could be started down the slope and the momentum of the car would cause the car to run up the incline a short distance. In accordance with this order of Beale's a car was started down the slope, and, without the cable being attached, it ran up the incline for a distance of seven or eight feet, at which point it stopped and tipped over backwards. Beale ordered the plaintiff to remove the stone from the car and track as soon as he had eaten his dinner. Plaintiff found the car, and the stone which had fallen out of it, right at the foot of the incline. He removed the stone as directed, and the car was replaced on the track. Plaintiff then resumed work, breaking stone in the quarry. While engaged in this work the car was re-loaded and was started toward the crusher. When it reached the heel of the incline the cable was attached and the car was drawn seven or eight feet up the incline, when the front wheels left the track. Beale ordered the plaintiff to go, with others, and replace this car on the track. Plaintiff, with a man named Jensen, replaced the front wheels, which were off, on the track, and plaintiff looked to see whether all the wheels were properly on the track, and observed that they were. At this time the cable was still attached to the car. Plaintiff then stepped off the track, on the west side thereof, and started back to his work

down the incline. After going a short distance he looked back, and observed the car move back about a foot and suddenly stop, and then it fell off the track, on the west side thereof, upon the plaintiff, causing the injuries complained of in this suit. The evidence shows that in starting the machinery which controls the cable, the cable is always at first loosened, permitting a car to go back a short distance, if on the incline.

The evidence further tends to prove that the cars which were run on this track were of twenty-nine inch gauge; that the rails for some distance were too close together; that this condition started about two and one-half feet from the heel of the incline and extended to a point about eight feet above; that there was a joint at the first mentioned point, and that the space between the rails there was about three inches narrower than the space between the wheels of the cars; that this was the narrowest place, and the space gradually widened as it extended up the incline, for about eight feet, at which point the gauge was about right; that the gauge of the track should be about thirty inches, but that in places it was only twenty-seven inches; that the effect of running a car over the track at this narrow place would be that it would not follow the track—it would climb the rails; that at a place about seven or eight feet up the incline the track was not blocked for a distance of four or five ties—it was loose and swinging, and one tie was not spiked at all; that the east ends of four of these ties were on a solid bed, while the west ends had nothing under them and were three and a half to four inches above the solid bed, and the track on that side would be depressed by the loaded car passing over it.

The evidence further tends to prove that, after the injury, Pitman, vice-president of the appellant company, and one of its other employees, visited appellee at his home and obtained a release from him for the injury sustained by him on the occasion above referred to. The

release, on its face, is to the London Guarantee and Accident Company, releasing it from all liability, but Pitman testified that he informed appellee that it was a release to the Momence Stone Company, and that appellee signed it as such, in consideration of $25, which was paid to him at the time of signing the instrument. Appellee, however, testified that nothing was said about a release; that he could not read and that the paper was not read to him; that Pitman told him that the men at the quarry had raised the money among themselves for him, and that they wanted Pitman to take a receipt to show that he had given the money to appellee; that he signed it for such receipt and not for a release of his cause of action for the injuries sustained, and that he did not know that it was a release he had signed until appellant introduced it in evidence on the first trial of this cause.

WILLIAM J. MILES, and J. F. CANTY, for appellant.

E. P. HARNEY, T. F. DONOVAN, and T. W. SHIELDS, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

There is evidence in this record, the substance of which appears in the foregoing statement, from which the jury might reasonably infer that the appellant failed to provide a reasonably safe place for the appellee to work in when it sent him to assist in putting the car back on the track at the time he received the injury, and that appellant knew, or ought to have known, of the danger existing there at the time it directed appellee to go there, and the evidence also warrants the inference that the risk was not one which appellee assumed as an incident of his employment. The jury might well conclude that the danger and the injury were occasioned by the fact that the rails were too close together at a place on the incline a few feet above the heel of the incline,

and by the fact that four of the ties under the west rail at the same place were not properly supported.

It is argued that appellee, having taken the stone out of the car when it fell over backward on the first trip, must or ought to have known of the danger. The place where the stone was taken out of the car on that occasion was at the heel of the incline. All the knowledge that appellee could be reasonably held to have acquired from what he saw and what he did at that time was, that for some reason, which no doubt appeared to be the sharpness of the incline, a loaded car not drawn by the cable, and to which the cable was not attached, if started up the incline by momentum acquired in coming down the slope leading to the incline, would stop and tip backward. The evidence does not warrant the conclusion that appellee had, or ought to have had, any knowledge that the rails were too close together, or that the west ends of several of the ties were unsupported at a place a few feet above the heel of the incline. The injury was occasioned by the car tipping over sidewise when it was attached to the cable and after it had been drawn several feet up the slope by that agency, and the front wheels, when they went off the track, were seven or eight feet further up the incline than the point at which appellee had removed the rock from the track and car on the earlier occasion. The cable was attached to the car before it started up the incline on the second trip, and it was drawn to the point which it reached at that time by the cable. We do not think it can be said that the dangerous condition of the place, which resulted in appellee's injury, was a condition of which he had, or ought to have had, knowledge. On the other hand, the manager of appellant saw the overturning of the car on the first occasion, and saw that it refused to go up the incline when attached to the cable, on account of its being derailed on the second occasion. Without making any investigation in regard to the condition of the track at

the place where the car was derailed, he sent appellee there to get it back on the track. It was the duty of appellant, in the exercise of ordinary care, when the car was derailed, especially in view of the fact that it had been overturned at or near the same place shortly before that, to ascertain the condition of the track and the surface of the incline at that place before sending appellee there for the purpose of replacing the car, and if, on such investigation, the place was found unsafe, to advise appellee of its condition before he went there to do the work of replacing the car, so that he could assume the risk or not, as he saw fit. Here the master, by its manager, superintended the laying of the track. Had the track on the incline been properly inspected after the work was done,—and ordinary care on the part of the master required such an inspection,—the defects would have been discovered; and as the master, through the manager, exercised supervision over the work of laying the track on the incline, its opportunity of learning of the defects were better than those of the servant. When appellant's manager directed appellee to replace the car, the latter had the right to believe that appellant had performed its duty and provided him a reasonably safe place in which to do the work it then directed him to do. Had appellee been directed to ascertain what the defect was, the situation would be different. The doctrine of assumed risk does not apply. Presuming, as we must, that the evidence for plaintiff is true, it warrants the jury in finding, first, that the place was not reasonably safe; second, that the master, in the exercise of ordinary care, would have had knowledge of its defects; third, that the servant did not know of the defects and did not have equal opportunities with the master of knowing of them. The case is therefore within the rule fixing the master's liability which was laid down by this court in *Lake Erie and Western Railroad Co.* v. *Wilson*, 189 Ill. 89.

It is said, however, that the rule requiring a master to provide and maintain a safe place for the carrying on of his work does not apply where the place is being constantly changed by the work there carried on. If appellee had received an injury at the place where he was quarrying stone and where the work of blasting or otherwise loosening the stone and taking it away constantly changed his surroundings, and the injury had resulted from the fact that the place was unsafe, this argument would be proper for our consideration; but he was injured on the incline, alongside the track of appellant. This track was not being constantly changed, but when once put down was left in the same place for two or three days, and was not being changed at the time that the injury occurred. The work of changing it had just been completed, and in the ordinary course it would not be again changed for several days.

The court properly refused to direct a verdict for the defendant.

Appellant asked, and the court refused, the following instruction:

"The court instructs the jury that one of the defenses offered by the defendant in this case is, that the injuries charged by the plaintiff in his declaration to have been received by him were fully released and discharged by him. If you find, from the evidence, that the release in question was his act and deed, then it is unnecessary for you to consider or determine to what extent he was injured, or what amounts of money, if any, he expended, or what time, if any, he lost, or what pain or suffering, if any, he endured. Nor is it proper for you to determine whether the amount paid him as a consideration for the execution of said release was a sufficient amount. If you believe, from the evidence, that the release in question was executed by the plaintiff while he was in the possession of his ordinary mental faculties and with a full understanding of what he was doing, and without any

fraud on the part of the defendant or those acting for it in such transaction, then all the above causes of action would be discharged by said release."

Appellant had the right to have the jury instructed that if it appeared, from a preponderance of the evidence, that appellee had, for a valuable consideration, compromised and satisfied his claim against appellant growing out of the injury complained of, then he could not recover. We think, however, that the instruction was liable to mislead the jury. By it they would be told that if "the release in question was the act and deed" of appellee it was unnecessary to determine the extent of his injury or the amount of his damages. A jury, unlearned in law, would be very apt to think that if the appellee signed the instrument in question then it would be his act and deed, and without an instruction explaining to the jury the language last above quoted we do not think it was error to refuse it. Further, the last sentence of the instruction assumes that those who obtained the release were acting for the defendant. This was assuming a fact the existence of which was denied. The testimony of appellee indicated that these persons were acting for certain charitably disposed individuals whose sympathies had been aroused by his misfortunes. The release itself, which they took at the time, shows that they were acting for the London Guarantee and Accident Company, which is not otherwise shown to have had any connection with the case. To make this assumption by the instruction was clearly wrong. (*Germania Fire Ins. Co.* v. *Klewer*, 129 Ill. 599.) The instruction was properly refused.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*