**John D. Mattocks, Appellee, v. Chicago & Alton Railway Company, Appellant.**

**Gen. No. 5,879.**

1. COMMERCE, § 4*—*when train and employes engaged in interstate commerce.* Where a train itself or any of its cars or merchandise therein are being shipped from a point in one State to a point in another State, the train is engaged in interstate commerce, and an employee assisting in the running of such train is engaged in interstate commerce so as to entitle him to the protection of the Federal Employer's Liability Act, though he may not be intending to pass outside the limits of a State.

2. COMMERCE, § 4*—*when evidence sufficient to constitute a prima facie case that train was engaged in interstate commerce.* In an action by a brakeman to recover for personal injuries, evidence adduced by plaintiff showing that some of the cars carried by the train had tags thereon indicating shipments from another State, and that the cars themselves were lettered as belonging to railroads located in other States, *held* sufficient when considered with

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.*
Vol. CLXXXVII 34

other evidence to make a prima facie case for plaintiff that some of the cars and the merchandise therein came from another State, and that the train was engaged in interstate commerce so as to entitle him to recover under the Federal Employer's Liability Act.

3. MASTER AND SERVANT, § 704*—*when evidence sufficient to show negligence of engineer resulting in injury to brakeman.* In an action by a head brakeman against a railroad company to recover for personal injuries received in attempting to board the head end of a freight train, evidence *held* sufficient to sustain a verdict that the engineer operated the train at a rate of speed which was negligent in view of the fact that he knew it was his duty to permit the brakeman to get upon the head end of the train.

4. MASTER AND SERVANT, § 205*—*application of fellow-servant doctrine under Federal Employer's Liability Act.* Under the Federal Employer's Liability Act of 1908, a railroad is liable for personal injuries resulting to an employe through the negligence of a fellow-servant.

5. MASTER AND SERVANT, § 430*—*effect of contributory negligence in suits under Federal Employer's Liability Act.* Under the Federal Employer's Liability Act, contributory negligence is no bar to an action for injuries sustained by an employe, but the employer is entitled to have the damages diminished by a jury on account thereof.

6. MASTER AND SERVANT, § 302*—*when question of assumed risk not involved in suit under Federal Employer's Liability Act.* In an action by a brakeman to recover for personal injuries for the negligence of the engineer in running defendant's train whereby the brakeman was injured in attempting to board the train, *held* that there was no question of assumed risk in the case to prevent the brakeman from recovering under the Federal Employer's Liability Act, and that the court properly refused to submit that question to the jury.

Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed April 15, 1914. Rehearing denied and opinion modified May 21, 1914.

STEVENS, MILLER & ELLIOTT, for appellant.

WEIL & BARTLEY and NATHAN H. WEISS, for appellee.

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

Mr. Justice Dibell delivered the opinion of the court.

On May 21, 1911, John D. Mattocks was in the employ of the Chicago & Alton Railway Company as a brakeman and was head brakeman on a freight train of that company running between Peoria and Dwight. When the train on which he was working reached a station called Nevada, it was to meet and pass a passenger train, and, as the freight train was too long to stand upon the side track at that place, Mattocks was ordered ahead by the engineer to flag the passenger train and to so set the switches so that the passenger train could go in upon. the switch track. When the passenger train had entered the switch track, the switch was closed again and the freight train started ahead. Mattocks was about a quarter of a mile ahead of the freight engine, but as the freight train started up again Mattocks ran back to meet it and attempted to board the second car of the train, as his duties as head brakeman required him to be on the front end of the train. In attempting to board this moving train he was thrown under the wheels and his leg was run over, necessitating amputation below the knee. He brought this suit to recover damages for said injury, and had a verdict and a judgment for four thousand dollars, from which defendant below appeals.

The declaration consisted of two counts, but the jury were instructed at the request of appellant that there could be no recovery under the second count, which was at common law, and the case went to the jury upon the first count, which charged liability under the Federal Employer's Liability Act of 1908, relating to common carriers engaged in commerce between the several states.

The first section of said act provided, among other things, that every common carrier by railroad, while engaged in commerce between any of the several states or territories, shall be liable in damages to any person

suffering injury while he is employed by such carrier in such commerce for such injury resulting, in whole or in part, from the negligence of any of the officers, agents or employes of such carrier. The third section provided, among other things, that in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employe, the fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe; provided that no such employe who may be injured shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury of such employe. Section 4 provided, among other things, that in any action brought against any common carrier under any of the provisions of this act to recover damages for injuries to any of its employes, such employe shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury of such employe. By an amendment in 1910, the jurisdiction of the courts of the United States under said act was made concurrent with that of the courts of the several states, and it was enacted that no case under that act brought in any state court of competent jurisdiction should be removed to any court of the United States. Said original Act of 1908, and the amendatory Act of 1910, are set out in *Mondou v. New York, N. H. & H. R. Co.,* 223 U. S. on pages 6 to 10, and said act is there sustained as valid, and as superseding any prior different statute in any State, so far as relates to injuries occurring in interstate commerce. The first count charged the duty of Mattocks to get

upon the front end of his train when it reached him, and the duty of the engineer to run at so slow a speed that Mattocks might safely get upon the same, and that the engineer violated that duty, and negligently ran at a high and dangerous rate of speed, and not a moderate and safe speed, which appellant, through its said servant, the engineer, then knew, and the appellee did not know, and that while appellee, in the exercise of due care and caution for his own safety, was attempting to get on the train, he was jerked and thrown under the train on account of said negligence of appellant, and was injured; and said count further averred that appellant was a common carrier by railroad, engaged in interstate commerce, and that appellee as a workman was employed by appellant in such commerce, and engaged therein, and that said injuries resulted from negligence of said engineer, who was employed by appellant in such interstate commerce, and engaged therein. Appellant alleges that this train was not engaged in interstate commerce; that its engineer was not negligent; that appellee was injured because of his own negligence; that appellee assumed the risk of his injury; and that the court erred in refusing instructions submitting the question of assumed risk to the jury.

This train contained twenty-two or twenty-three loaded cars, and was made up at Peoria, which was the end of appellant's branch road in that direction. Appellee went to work upon the train at Peoria, and he was not to go outside of this State with said train. We regard it as settled by numerous decisions in the Federal courts that if the train itself or any of the cars or merchandise therein are engaged in interstate commerce, that is, being shipped from a point in one State to a point in another State, an employe engaged in assisting in running that train is engaged in interstate commerce, although he himself may not be intending to pass outside of the limits of one State. The

proof showed that when a loaded car is started upon a journey it is the custom and usage of railroads that there be tacked upon said car a tag or card, stating the place where the shipment originated, and also its place of destination, and that said tag remains upon said car until it reaches its destination, and that then the custom and usage is to remove the tag, though it sometimes happens that through carelessness the tag is not immediately removed. The proof showed that the Iowa Central Railroad has a line which runs from a certain point in Iowa to Peoria, in this State, and that some of these cars were received from the Iowa Central at Peoria by appellant, and that there were upon some of these cars tags indicating that the shipment originated at Minneapolis and St. Paul, and that these cards were in a good state of preservation and apparently new. Appellee had not seen the merchandise which was inside these cars, nor had he any other means of tracing the origin of the cars or their shipments. They were cars which, by the lettering upon them, showed that they belonged to railroads located in other States than Illinois. We are of opinion that when all of this proof is considered together, including the testimony of appellee when recalled, a prima facie case was made that some of the cars in this train and the merchandise therein came from another State, and that the train was engaged in interstate commerce. Appellant had upon the stand several of its employes by whom this testimony could have been rebutted if not true. No evidence to the contrary was offered by appellant. Appellant must obviously have in its possession records which show the origin of these shipments, and it saw fit not to offer any testimony upon the subject. We conclude that appellee made a sufficient prima facie case that this train was engaged in interstate commerce, and that he, as an employe working upon said train, was en-

gaged in interstate commerce, and within the protection of the Federal statute.

The testimony shows that the engineer sent appellee forward to open the switch and to flag the passenger train, and that after the passenger train had entered the switch, the engineer started on with his freight train when appellee was a quarter of a mile ahead, and that appellee then ran back in the middle of the track until he had nearly reached the coming freight train and then stepped aside to get upon the head of it, and that this was his duty, and that it was the duty of the engineer to run his train then at a speed slow enough so that the brakeman could safely get upon it; and the testimony for plaintiff was that such safe speed was generally considered to be from three to five miles per hour, although some witnesses for defendant testified that brakemen were accustomed to get on at a higher speed. Appellee stepped to the side of the train, started to run with the train, so as to be in motion in the same direction, and he caught hold and attempted to get upon it, and was thrown down. This was about six o'clock in the evening. Appellee testified that he did not know the train was moving swiftly, but when he caught hold of it he found it was running some ten or twelve miles per hour. The engineer in his testimony concedes that he may have been running twelve miles per hour. The engineer did not look ahead, did not see appellee coming back, and apparently thought nothing about reducing his speed so that appellee could get upon the train. The engineer was in fact talking at that time with the conductor, who was upon the engine. The engineer was told that he was just passing the brakeman, but he did not reduce the speed of his train. There was some evidence to contradict some of these matters, but the jury have believed the witnesses whose testimony was favorable to the contention of appellee, and the trial judge has approved that conclusion, and we consider it as standing as now proven that the engineer op-

erated his train at a rate of speed which was negligent, in view of the fact that he knew that it was his duty to permit the head brakeman to get upon the head of the train. The testimony that this caused the brakeman to be thrown and injured is not disputed. Under the Federal statute the appellant is liable for an injury resulting to appellee by the negligence of a fellow-servant. It is contended that appellee ought to have known that the train was running at a speed which made it dangerous for him to attempt to get upon it, and the proof shows that he had authority to signal the engineer to slow down if he found it necessary to do so, and it is contended that he was negligent in not refraining from climbing upon the train, and, instead, giving a signal to reduce speed. Under section 3 of the Federal statute referred to, such contributory negligence, if it did exist, would not bar a recovery, but the appellant would be entitled to have the damages diminished by the jury on account thereof; and instructions were given for each side authorizing such diminishing of the damages, if the jury found appellee guilty of contributory negligence, and no complaint is made that the damages were not sufficiently so diminished. Appellant contends that appellee assumed all the usual risks of his employment, including the risk of getting upon trains in motion. We are not unmindful that contributory negligence and assumed risk have been distinguished in *Chicago & E. I. R. Co. v. Heerey,* 203 Ill. 492, and in *Knox v. American Rolling Mill Corporation,* 236 Ill. 437. We are of opinion, however, that to apply the doctrine of assumed risk to this case would be to practically nullify the Federal statute. Appellee certainly did not assume the risk that the engineer would negligently run the train at a high and dangerous rate of speed, contrary to his duty, as shown by the evidence. If we say that he assumed the risk of his own negligence, then we make of no effect

the provision of the statute that his contributory negligence shall not bar a recovery, but shall only diminish the amount of damages to be awarded. We do not hold that appellee was negligent. Indeed, we are of opinion that the jury could fairly find from the evidence that he was not negligent, but there is no proof of anything causing this injury except the negligence of the engineer and the possible negligence of appellee. We are therefore of opinion that there is not in this case any question of assumed risk, and that the court therefore properly refused to submit the question of assumed risk to the jury.

The clerk will tax the cost of the additional abstract to appellant.

The judgment is therefore affirmed.

*Affirmed.*