# Matt Kusturin, Appellee, v. Chicago & Alton Railroad Company, Appellant.

## Gen. No. 6,501.

1. PLEADING, § 123*—*when special replication required.* A special plea concluding with a verification requires a special replication.

2. PLEADING, § 379*—*when case treated as if oral issues joined.* Where parties go to trial on a special plea concluding with a verification without a written issue joined thereon, it will be treated on review as if issue had been orally joined thereon.

3. COMMERCE, § 4*—*what constitutes interstate.* The removal of old rails spread along the track from which they had been taken and replaced by new rails in repair of a railroad engaged in interstate commerce is a part of interstate commerce whether removed at once on being replaced by the new rails or later.

4. MASTER AND SERVANT, § 302*—*when employee does not assume risk of negligence of fellow-servants.* Under the Federal Employers' Liability Act an employee does not assume the risk of the negligence of his fellow-servants, but if they were negligent and their negligence caused his injury, the employer is liable.

5. MASTER AND SERVANT, § 697*—*when evidence shows negligence of fellow-servants in loading rails on flat car.* Evidence held, sufficient to warrant the finding that defendant's servants employed with plaintiff in loading rails on a flat car were negligent in throwing one end of the rail, which he was assisting at the other end in loading on the car, too quickly, whereby he was injured.

6. RELEASE, § 18*—*when constitutes bar to prosecution of action for personal injuries.* A release of damages executed by plaintiff and a draft or check cashed by him in consideration thereof con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

stitutes a bar to an action by him to recover damages for injuries sustained by him if such instruments were executed by him with knowledge of their meaning.

7. RELEASE, § 27*—*when not a bar to prosecution of action under Federal Employers' Liability Act.* Evidence *held* sufficient to warrant the finding that plaintiff's action to recover damages under the Federal Employers' Liability Act was not barred by a release of damages executed by him and a draft or check cashed by him in consideration thereof, where same were in the English language, with which plaintiff was unacquainted, and the release was executed by him through an interpreter speaking the Austrian language, to which plaintiff's language, Croatian, was similar, with the understanding by plaintiff that he was offered half pay under the State Workmen's Compensation Act for the time since his injury.

8. WITNESSES, § 218*—*what is improper cross-examination of plaintiff in action for personal injuries.* An objection to a question on cross-examination of plaintiff, in an action to recover damages for personal injuries, if he was willing to remove his clothing and have the jury look at his injured part and to have a certain physician in the presence of his own physician examine the part, was properly sustained.

9. APPEAL AND ERROR, § 1523*—*when giving of improper instruction is harmless error.* The giving of an instruction stating the substance of the entire Federal Employers' Liability Act, including provisions therein not involved in the case, was not reversible error where the jury could not have been misled.

10. INSTRUCTIONS, § 53*—*when instruction does not assume facts.* An instruction did not assume a certain fact where it stated the instruction should not be operative until the jury should first find as to such fact.

11. INSTRUCTIONS, § 63*—*when instruction is not erroneous as assuming injury to plaintiff.* An instruction *held* not erroneous as assuming plaintiff was injured where the evidence certainly showed he was injured.

12. MASTER AND SERVANT, § 833*—*when omission of clause on effect of contributory negligence in instruction in action under Federal Employers' Liability Act is harmless error.* The omission in an instruction, in an action under the Federal Employers' Liability Act, indicating for what injuries plaintiff could recover if he was found entitled to a verdict, of a statement that if plaintiff was guilty of contributory negligence he could not recover the full amount he had suffered but the loss should be apportioned between himself and his employer, *held* not reversible error where the instruction was limited to that which the jury might find for him

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Kusturin v. Chicago & Alton R. Co., 209 Ill. App. 55.

under the evidence, and the instructions of the court and another instruction fully advised the jury as to defendant's rights in case the injury was partly attributable to plaintiff's negligence, and where the evidence was insufficient to sustain a special verdict finding plaintiff guilty of contributory negligence.

13. MASTER AND SERVANT, § 699*—*when evidence does not show contributory negligence in failing to get out of road of rail being loaded on car*. Evidence *held* insufficient to show that plaintiff was guilty of contributory negligence in not getting out of the way of the rail which he with other employees of defendant was loading on a car in time to avoid being struck by it as it rolled back off the car.

14. MASTER AND SERVANT, § 833*—*when instruction on contributory negligence is not ground for reversal*. In an action by a railroad employee to recover for personal injuries received while assisting in loading a steel rail on a flat car, an instruction that if the jury believed from the evidence and from the instructions of the court that plaintiff was suddenly placed in a position of peril by the fault of defendant and he could not reasonably have anticipated such danger, then the mere failure of plaintiff to exercise the care a prudent person would exercise, or the mere failure of plaintiff to exercise the same degree of care as if he had time for deliberation and the full exercise of his judgment and reasoning faculties, would not be contributory negligence on the part of plaintiff, *held* not misleading and not ground for reversal where the jury could not have found plaintiff was guilty of contributory negligence.

15. MASTER AND SERVANT, § 435*—*what degree of care for his safety required of employee placed suddenly in position of peril*. An employee when placed in a position of peril is required to exercise such care for his safety as a person of ordinary prudence would exercise under the same circumstances.

16. DAMAGES, § 128*—*when judgment not excessive*. A judgment for $2,500 on remittitur, *held* not excessive, where plaintiff was 36 years old when injured, was a laboring man with no qualifications for employment other than that of common labor, and was so injured by breaking of the arch of his foot that the arch was not restored to normal state and he would be unable for life to do ordinary work requiring much walking or standing, barring him from most kinds of manual labor.

Appeal from the Circuit Court of Will county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed February 12, 1918.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

O'DONNELL, DONOVAN & BRAY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

SNAPP, HEISE & SNAPP, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On November 3, 1915, appellee, while working as a laborer for appellant and assisting in loading old steel rails upon a flat car, was injured, and brought this suit against appellant to recover damages therefor, and filed a declaration of two counts, in both of which he averred that both himself and the railway company were engaged in interstate commerce at the time of the accident, and that they were each governed by the Federal Employers' Liability Act; and in the first count he charged his injury to the negligence of other servants and employees of appellant, and in the second count he charged his injury to the negligence of the foreman or vice-principal of appellant. Appellant pleaded the general issue and a special plea, which alleged that neither it nor appellee was engaged in interstate commerce at the time of this injury. The special plea concluded with a verification. If this was correct a special replication was required. The parties went to trial without any written issue joined on that plea. We therefore treat it as if issues had been orally joined thereon. *Butler v. National Live Stock Ins. Co.,* 200 Ill. App. 280, and cases therein cited. Appellee had a verdict for $5,821.80. Upon a motion by appellant for a new trial, the court required a remittitur of $3,321.80 and entered a judgment for appellee for $2,500, from which defendant below appeals.

At the trial it was stipulated that appellant was engaged in interstate commerce over its railway at the time of the injury, but it is insisted here that appellee was not then engaged in work which should be con-

sidered interstate commerce. The injury took place a little way south of the Village of Romeo, on the right of way of appellant. Its line there runs substantially north and south, and there were four tracks at that place. The west track was a siding about three-quarters of a mile long for use by southbound trains, and it was called the southbound passing track. Next east of it and about 5 inches higher was the southbound main track. Next east of that was the north-bound main track, and the most eastern track was the northbound passing track. At this point, and for some considerable distance north and south there-from, appellant had been for some weeks engaged in the business of taking up old steel rails in the two main tracks and putting down new steel rails, and for that purpose it had assembled in that vicinity three section crews with their respective foremen. They brought in the new steel rails and distributed them along the line. Then they would take up one old steel rail and put down one new one, and lay the old rail a little ways outside of the main track from which it was taken and then do the same thing with the next old rail in the main track, and so on. After some weeks had been spent in putting down new rails, they then engaged in the business of taking away the old rails. During the noon hour of the day of the injury a flat car which had been in use somewhere else was placed upon this southbound passing track, and after noon the three section crews began to load it with the old steel rails, their foreman being present and partici-pating, and the roadmaster being there and there-abouts. The rails lay between the southbound main and the southbound passing tracks, and the distance between the west rail of the southbound main and the east rail of the southbound passing track was between 8 and 9 feet. The flat car was not operated by steam power but was moved along from time to time by a bar as the rails were scattered just as they had been

taken out. Appellant contends that the removal of
these old rails was not interstate commerce. In *Ped-
ersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146 [3 N.
C. C. A. 779], an action under the Federal Employ-
ers' Liability Act, it was held that tracks and bridges
are as indispensable to interstate commerce by rail-
road as are engines and cars, and that all these instru-
mentalities must be kept in repair, and that the work
of keeping such instrumentalities in a proper state of
repair while used in interstate commerce is so closely
related to such commerce as to be in practice and in
legal contemplation a part of it, and that the fact that
the railroad is also used in intrastate commerce does
not prevent the employment of those who are engaged
in its repair or in keeping it in a suitable condition for
use from being an employment in interstate commerce.
It is therefore clear that those who brought in the
new rails and took up the old rails and laid the new
were, while doing so, engaged in interstate commerce.
We see no reason why the removal of the old rails is
not a continuation and completion of this work of re-
pair. If the section crew brought in one or more new
rails and took up the old rails and immediately car-
ried them away, no one we think would contend but
what the entire process of bringing in the new and
taking away the old was repair work in interstate
commerce. The fact that in the way appellant did this
work a mile or more of new rails were brought in and
laid before the old ones were removed from that part
of the right of way seems to us to make no difference.
In our view the whole process of bringing in the new
and taking away the old as well as the taking up of
the one and the putting down of the other was all repair
work of an interstate commerce road. But even if
these rails had been there for a long time, we consider
that proper maintenance of the right of way required
that they be removed, as much as if, instead of iron
rails, it were a growth of weeds or bushes between

those two tracks. The southbound passing track was often occupied by freight trains carrying interstate commerce, and taking that track in order to let interstate passenger trains go by southbound on the main track. Though the men in charge of the freight trains while on that southbound track were not likely to wish to walk along on the ground at that particular place some little distance from the end of the switch, yet many contingencies arise in the handling of freight trains when the brakeman do have to pass along a narrow space between tracks, and there was here on the outside, the west side, of the southbound passing track a ditch which prevented the ready passage of trainmen there. It would be necessary, or at least expedient for making that space fit to be traveled by trainmen when necessary, to have these old rails taken away from that place. We are of opinion that at the time appellee was injured he was engaged in interstate commerce within the meaning of the law.

It is denied that appellant was negligent. In passing upon that question it is to be remembered that in this suit, under the Federal Employers' Liability Act, appellee did not assume the risk of the negligence of his fellow-servants, but if they were negligent and that negligence caused his injury, the appellant is liable therefor. We so held in *Mattocks v. Chicago & A. Ry. Co.,* 187 Ill. App. 529, and in *Godby v. Wilson,* 203 Ill. App. 612, and it was also so held in *Devine v. Chicago, R. I. & P. Ry. Co.,* 266 Ill. 248. See also *Illinois Cent. R. Co. v. Skaggs,* 240 U. S. 66, where it was held in a suit under said act: ''If the injury was due to the neglect of a coemployee in the performance of his duty, that neglect must be attributed to the employer.'' The method of putting on the rails and the circumstances surrounding his injury were as follows: The rails were loaded from the east side of the flat car. There were stakes on the west side to prevent the rails going over, but none on the east. The meth-

od pursued was for the sixteen or eighteen men to be spread along the length of the rail. One of the section foremen gave an order "Up," when each man took hold of the rail with his hands in a certain way, and lifted it up. Then the foreman gave the order "High," and the rail was then raised as high as the men could reach. Then the foreman called out "Over," and the men threw the rail upon the car. The *Skaggs* case, *supra,* a case under the Federal Employers' Liability Act, is authority for the position that where several servants of an employer are cooperating together in doing that which requires concerted action, the negligence of any one of them is the negligence of the master, and such must necessarily be the rule where the fellow-servant doctrine does not apply. Some twenty or twenty-five rails had been placed upon this car, a full load of which would be about ninety rails. Each rail weighed about 750 pounds. This rail was picked up and raised high in the usual way. According to a part of the testimony the order "Over" was given and executed in the usual way. According to some other evidence not fully abstracted, the men at the north end of the rail threw that end onto the car while the foreman was still calling the word "Over," from which evidence, if believed, the jury could find that the men at the end of the rail were negligent and threw too soon. There was proof that some one in authority called out "Hurry up," or "Go ahead," which orders apparently had a tendency to distract the men handling the rail from that unity of action important to safety. Other witnesses denied that such orders were given. Whatever occurred, the result was that the north end of the rail went further than the south end, and the rail rolled back and off the car. There were about nine section men near the north end of the rail, and about nine near the south end of the rail. Appellee was among the men at the south end, about the third man from

the south end of the rail. There was a shout given to get out of the way and everybody did get away except appellee. The rail fell upon the instep of appellee's left foot, and the arch of the foot was broken down. Appellee testified that as he stepped back he caught his heel against a tie of the southbound main. Another witness testified that appellee caught his toe on the tie, and others did not see him catch his foot upon anything. He was removed and taken to a hospital. Appellee had only been at work for the railway company 2 or 3 weeks. None of the other rails thrown upon that car that afternoon had fallen back, nor was that a usual or customary event, although men experienced in the business had known of rails falling back. It was, no doubt, the duty of the foreman in charge to give his orders in such a way and to cause the work to be done under such instructions as would reasonably tend to produce concert of action, if such concert was essential to safety. The jury could have found from the evidence that the men at the north end threw this rail too quickly and were negligent in so doing, and under the Federal Employers' Liability Act this negligence was the negligence of the employer. The jury determined that question of fact for appellee, and therefore found that this was not a mere accident for which no one was responsible. There was evidence to warrant that finding.

After appellee had been in the hospital a certain length of time, and when he was about to leave it, he was visited twice by a claim agent of appellant accompanied by a saloon keeper who could speak the Austrian language, of which the Croatian dialect, with which alone appellee was acquainted, was a part or to which it was very similar. Appellant offered in evidence a release of damages which appellee then executed and a draft or check for $70 which he cashed at a bank in the company of this interpreter. If appellee executed these instruments with knowledge of

their meaning he could not overcome them in an action at law. *Hartley v. Chicago & A. R. Co.*, 214 Ill. 78; *Momence Stone Co. v. Turrell*, 205 Ill. 515. Appellee testified that he had worked for a number of years for a mill in Joliet which was under the Illinois Workmen's Compensation Act, and that he understood that these men were offering the half pay which he would be entitled to under the Illinois Act if he and his employer had been under it, and that he supposed he was receiving half pay for the time which had passed since his injury, and that he did not at all understand that he was releasing his cause of action. The receipt and release which he signed were in the English language, and professed to be under the Workmen's Compensation Law of the State of Illinois, as well as under the Federal Employers' Liability Act. The interpreter testified that he told appellee that this paper was payment to him under the Workmen's Compensation Act, and again, that he, meaning appellee, was offered so much money for the 14 weeks. The jury were warranted in finding that appellee, who was a Croatian and spoke and understood very little English, and could not read English, supposed he was signing a receipt for $70 paid to him as half payment for the time which had elapsed since his injury under the provisions of the Workmen's Compensation Act of the State of Illinois. The jury were therefore warranted in finding that this action was not barred by that release.

On cross-examination of appellee, appellant's counsel asked him if he was willing to have his shoe and stocking removed and have the jury look at his foot, and if he was willing to have a certain physician examine his foot in the presence of his own physician. Appellee's counsel objected to these questions and the objection was sustained. In *City of Chicago v. McNally*, 227 Ill. 14, the trial court sustained an objection to a similar question and it was held that the

ruling was correct. It is true that the language of the court in that case was not very positive, but it seems to us that it being as there stated the settled law of the State that a plaintiff in such an action cannot be required to submit to a physical examination as to his or her injuries, it is but an evasion of that rule to permit such a plaintiff to be required to state to the jury whether or not he is willing to submit to such an examination. To permit such a question to be put in the presence of the jury is practically compelling him to submit to the examination because of the unfavorable effect likely to be produced upon the minds of the jury if he refuses. In *Cole v. City of East St. Louis,* 158 Ill. App. 494, the Appellate Court of the Fourth District took the view that the objection by counsel for plaintiff to such a question in the presence of the jury amounted to a refusal to submit to the examination. Appellant had the benefit before the jury of the fact that appellee's counsel had refused, and we think that was sufficient. We find no reversible error in other rulings of the court upon evidence of which complaint is made.

It is claimed that the court erred in giving certain instructions for appellee. The third instruction given at appellee's request stated the substance of the entire Federal Employers' Liability Act, including provisions therein not involved in this case. We think the portion objected to might well have been omitted, as said by us in a former case, but still we do not think the jury could have been misled to believe that appellee could recover here for any defect in appellant's track or roadbed. While appellee did claim that his heel was caught by a tie and thereby he was prevented from getting away, it was nowhere claimed that there was anything defective or improper in that tie or in its existence at that place. We think the jury were not misled by that instruction. It is argued that the fifth instruction assumed that the men of the section crews

failed to act in concert at the time in question and that plaintiff sustained injuries in consequence thereof. The instruction is too long to set out here in full, but the part complained of was preceded by the words "if you believe from the instructions of the court and the evidence in the case," and then followed language that that instruction should not be effective unless the jury had first found from the evidence that ordinary care required the men working on the rail to endeavor to act in concert, and that in the exercise of ordinary care they could have done so, and that they failed to do so, so that the language complained of did not become operative until the jury had first found from the evidence under the instructions that the section crews of appellant were lifting the rail which injured appellee and were throwing it on the car, and that ordinary care required them to endeavor to act in concert, and that they could have done so in the exercise of ordinary care and that they did not do so. The only thing possibly assumed without being previously submitted for determination by the jury was that appellee sustained injuries by the falling of that rail, and it is certain from the evidence that he did so sustain injuries. The sixth instruction properly stated the rule of law governing the supposed release. The seventh instruction was in the main the ordinary stock instruction indicating for what injuries appellee could recover if he was found entitled to a verdict. It does not tell the jury that if appellee was guilty of contributory negligence he could not recover the full amount he had suffered, but the loss should be apportioned between himself and his employer under the act in question. It is argued that it was erroneous for that reason. Such a qualification of this instruction might very properly have been made but, nevertheless, we think the omission of that qualification was not reversible error in this case for two reasons: The instruction is limited to that which the jury may find

Kusturin v. Chicago & Alton R. Co., 209 Ill. App. 55.

for him "under the evidence and the instructions of the court in this case." This practically writes into this instruction all the other instructions, and the twelfth instruction given for appellant states its rights in case this injury was partly attributable to the negligence of appellee in a very full and satisfactory manner, and it is impossible that the jury could have been misled by instruction number 7. Again, upon a careful examination of all the evidence, we are of opinion that if the jury had returned a special verdict that appellee was guilty of contributory negligence, that verdict could not be sustained. The time which elapsed from the instant when appellee discovered that the rail was going to roll off the car and the time when it struck his foot was exceedingly short. The fact that the other men got out of the way does not prove that appellee was negligent in not getting out of the way. The jury must necessarily have found that something impeded him. If his foot was not caught by a tie which slightly projected from the bank he may have been in fact stopped by the slope of the bank where he was. But if nobody knows how the heel was caught, there is no indication of any conduct on his part indicating negligence; and inasmuch as we conclude that the jury could not have found him guilty of contributory negligence, we think that this instruction if considered without regard to the other instruction, No. 12, still was not reversible error. The fact that appellee did not get out of the way is the only thing which in argument here is called his negligence. But if the entire eighteen men were negligent in so throwing that rail that it did not remain upon the car, or if the men at the south end were negligent in not throwing more quickly or more rapidly or forcibly than they did, still appellee's share in that negligence must have been very slight. He was a new man, unacquainted with the business, and had two or three men south of him and several men north of him, and the

amount which the jury could have awarded as his share of the total negligence must have been slight, and very much more than covered by the reduction which the court required of $3,321.80. Instruction number 7 should also have directed the jury to credit appellant with the $70 which it paid appellee, but that omission also is much more than covered by the remittitur required. Instruction number 11 given for appellee is as follows:

"The jury are instructed that if you believe from the evidence, and under the instructions of the court, that the plaintiff was suddenly placed in a position of peril by the fault of the defendant, and that he could not reasonably have anticipated such danger, then you are instructed as a matter of law, that the mere failure of the plaintiff to exercise the care a prudent person would have exercised, or the mere failure of the plaintiff to exercise the same degree of care as if he had time for deliberation and the full exercise of his judgment and reasoning faculties, will not be contributory negligence on the part of the plaintiff."

This instruction was awkwardly and defectively worded. Undoubtedly the appellee, when placed in a position of peril, was required to exercise such care for his safety as a person of ordinary prudence would have used under those circumstances. *Peoria, D. & E. Ry. Co. v. Rice,* 144 Ill. 227. Yet we think the latter part of the instruction sufficient to prevent the jury from being misled by the defective language in the middle of it; and moreover, as we are of opinion that the jury could not reasonably find that appellee was guilty of contributory negligence under the circumstances of the case, the instruction could do no harm.

It is argued that the judgment is excessive. The pain and suffering endured by appellee is to be taken into consideration in determining that question. Appellee was about 36½ years old when injured. He was a laboring man, and apparently had no qualifications that would fit him for any other employment than that

of a common laborer. We think it clear from the evidence that although a good union of the bones of his foot was obtained, yet the arch thereof was not restored to its normal state, and that he was unable and will be unable for life to do any ordinary work which requires much walking or standing upon his feet, and this bars him from most kinds of manual labor. We conclude from the evidence that we would not be warranted in holding that the judgment is excessive. The judgment is affirmed.

*Affirmed.*