JOHN F. DEVINE, Admr., Defendant in Error, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed December 16, 1914—Rehearing denied Feb. 3, 1915.*

1. NEGLIGENCE—*the plaintiff may rely upon his uncontradicted prima facie case.* If there is uncontradicted evidence tending to show that at least one of the cars in the string which the deceased was engaged in switching was bound for a point outside the State, the plaintiff may rely upon such *prima facie* proof that the deceased and his employer were engaged in an act of inter-State commerce, and no presumption can arise from the fact that the plaintiff did not by the records show the origin and destination of all the cars in the string.

2. SAME—*if there is evidence tending to show negligence its weight is not for the Supreme Court.* If there is evidence fairly tending to sustain the charge of negligence in an action against a railroad company under the Federal Employer's Liability act, the weight of such evidence is not a question which the Supreme Court can consider.

3. SAME—*what is not a defense to action under Federal Employer's Liability act.* Under the Federal Employer's Liability act the fellow-servant doctrine is not available as a defense, and if the accident was the result of the negligence of a fellow-servant of the deceased it cannot be said that the risk of such negligence was an ordinary risk of the employment.

4. SAME—*the Federal Employer's Liability act supersedes State laws.* In the matter of the liability of an employer for the death of an employee while engaged in inter-State commerce the Federal Employer's Liability act has superseded all State laws, and the amount of damages recoverable is not governed by the law of the State where the accident occurred.

5. APPEALS AND ERRORS—*point not raised in the Appellate Court cannot be raised in Supreme Court.* An objection that the judgment in an action under the Federal Employer's Liability act is erroneous because it does not apportion the damages between the widow and the son of the deceased cannot be urged in the Supreme Court where it was not raised in the Appellate Court.

6. INSTRUCTIONS—*when instruction does not authorize verdict for negligence not charged.* An instruction which is merely intended to direct attention to the Federal Employer's Liability act, under which the action is brought, and which sets out the language

of the act applicable to the case, cannot be said to authorize a verdict for any negligence proved, whether charged or not, where it does not direct a verdict and there are other instructions limiting the recovery to the negligence charged and proved and requiring the instructions to be regarded as a whole.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MAZZINI SLUSSER, Judge, presiding.

M. L. BELL, and A. B. ENOCH, for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

John F. Devine, as administrator of the estate of William J. Mason, deceased, recovered a judgment for $15,000 against the plaintiff in error, the Chicago, Rock Island and Pacific Railway Company, for damages on account of the death of his intestate, alleged to have been caused by the negligence of the plaintiff in error. The Appellate Court having affirmed the judgment, the record has been brought before us by a writ of *certiorari.*

The deceased was a switchman in the employ of the plaintiff in error in the city of Chicago. He was head brakeman of a crew consisting of an engineer, fireman, conductor, rear brakeman and head brakeman. This crew did miscellaneous switching in various parts of the yards, made deliveries of cars to different industries and to the yards of other railroad companies, and took cars from these different places to the yards of the plaintiff in error. On June 20, 1910, this crew, with an engine, went north from the plaintiff in error's yards at Blue Island to One Hundred and Third street, a distance of two miles, where the yards of the Panhandle railroad were located, just west of the plaintiff in error's railroad. The plaintiff in error had

three tracks extending north and south at this place, num-
bered, from west to east, 5, 4 and 3. Beginning at One
Hundred and Third street and extending north the Pan-
handle had three tracks, known as the east track, the mid-
dle track and the lead track. Connecting the Panhandle
tracks with the main line of the plaintiff in. error was a
track leading south across One Hundred and Third street
and connecting with track 5 of the plaintiff in error just
south of One Hundred and Fourth street. Joining this
track was another switch from track 5 to track 4, and still
farther south was a connection between tracks 3 and 4 of
the plaintiff in error. On the morning of the accident there
were forty-five cars in the Panhandle yards to go south to
Blue Island,—twenty-three just north of One Hundred and
Third street on the middle track of the Panhandle road,
and twenty-two just west of the twenty-three, on the lead
track. The engine backed in on the middle track, coupled
to the twenty-three cars and the air on them was connected
with the engine. These cars were pulled south, backed in
on the west track of the Panhandle yards and coupled to
the twenty-two cars upon that track, but the air on these
twenty-two cars was not connected with the engine. The
train then started south out of the Panhandle yards and
crossed to the plaintiff in error's track 5 and from there
to track 4. The deceased was standing on the top of the
train, about half way back, giving signals to the conductor,
who was south of him, and to the engineer. Just as the
last car cleared the switch between the track of the Pan-
handle and track 4 of the plaintiff in error the train came
to a sudden stop, and the deceased was thrown from the
top of the car on which he was standing and killed.

The suit was brought under the Federal Employer's
Liability act. The declaration alleged that on the day of
the accident the plaintiff in error owned and operated a
railroad from Chicago into other States and was engaged
as a common carrier in commerce between the States, and

that the deceased was employed as a switchman with a certain engine and cars, and at the time of the accident was employed in commerce between the States. The negligence charged was that the engineer negligently stopped his train with great and unusual suddenness, by reason of which the deceased was thrown from the top of the car to the ground and killed.

The plaintiff in error contends that the court erred in refusing to direct a verdict for it because there was no competent evidence that the particular service in which the deceased was engaged at the time he was killed was inter-State commerce. The case was tried before the decision of the case of *Behrens* v. *Illinois Central Railroad Co.* 233 U. S. 473, and the theory of the defendant in error was that the deceased, being regularly employed indiscriminately in inter-State and intra-State commerce, and his work and safety having a real and substantial relation to and connection with inter-State commerce, was therefore employed in inter-State commerce within the meaning of the Federal Employer's Liability act. Probably on account of the theory on which the case was tried, the evidence that any car among those being moved at the time the deceased was killed was then engaged in inter-State commerce is slight. The efforts of the counsel for the defendant in error in accordance with his view of the law were directed to showing that the railroad of the plaintiff in error handled, indiscriminately, inter-State and intra-State traffic at the same time and in the same trains, and there was little direct or positive evidence of the make-up of the particular train. The conductor of the deceased's crew did, however, testify that this train was made up of foreign cars and cars of the plaintiff in error,—of cars from out of the State and cars from in the State. This was not enough, for this was not evidence that the cars from out of the State or the cars from in the State were then engaged on an inter-State trip. In answer, however, to the question, "Some cars go-

ing out of the State and some going to points in the State?" the witness answered, "Yes." This is evidence that some of the cars in the train were engaged in an inter-State trip,—at least that one of them was. It is slight, but it is not contradicted. Counsel for the plaintiff in error say that counsel for the defendant in error could have shown, by records, the origin and destination of every loaded or empty car in the switch train. It was at least as easy for the plaintiff in error to produce these records as for the defendant in error, and no presumption arises against the latter from his not producing the records but relying on the *prima facie* case made by the uncontradicted testimony of his witness. There was evidence tending to show that the deceased was engaged in inter-State commerce when he was killed, and the weight of it is not for our consideration.

It is further insisted that there is no evidence in the record from which the negligence of the engineer can be reasonably inferred; that the intention, as the cars were being hauled out of the Panhandle yards, was to pull them across One Hundred and Third street and stop and connect the air-brakes on the last twenty-two cars; that it was the duty of the deceased to make this connection, which was usual and customary under similar circumstances; that the deceased signaled the engineer to stop after the last car had crossed One Hundred and Third street, and that the engineer, in response to the signal, did stop the train, which was moving very slowly. On the other hand, the defendant in error claims that it was not the intention to connect the air and that it was not usual and customary to do so under similar circumstances and that the deceased gave no signal to stop the train for that purpose; that the train slowed up so that the switchman could turn the switch after the last car had passed it and then run and get on the train; that no signal was given to stop, but the engineer did stop very suddenly, causing a crash which was heard for a great distance and caused people to leave their

occupations and go to see what was the matter, and that in consequence of the suddenness with which the train was stopped the deceased was thrown to the ground and killed. There was evidence fairly tending to support the theory of the defendant in error.

What has been said disposes of the contention that the plaintiff could not recover because the accident was the result of an ordinary risk of the employment of the deceased. Under the Federal Employer's Liability act the fellow-servant doctrine was not available as a defense, and if the accident was caused by the negligence of the engineer in suddenly stopping the train with unnecessary violence the deceased did not assume the risk of such negligence. The court did not err in refusing to direct the verdict.

The verdict and judgment were for $15,000, and it is contended that the court erred in entering judgment for more than $10,000, the limit of recovery fixed by the statute of this State. It is argued that placing a limit upon the amount which can be recovered from the master for negligently causing the death of a servant is a regulation of the relation of master and servant with which Congress did not see fit to interfere in enacting the Federal Employer's Liability act, and that therefore the limitation of the State statute applies to such a cause of action. The cause of action sought to be enforced in this case was created by the Federal statute. No cause of action existed at common law for damages on account of death caused by a wrongful act. The statute of this State creating a liability in such cases had been in force for many years before the enactment by Congress of any employer's liability act. Under its provisions employers engaged in inter-State commerce were liable for damages occasioned by the death of their employees while engaged in inter-State commerce, caused by the negligence of such employers. This was because Congress, though having power to regulate the liability of employers engaged in inter-State commerce for injuries to

their employees while engaged in such commerce, had not acted on that subject. Congress having now assumed control of the subject by the enactment of the Federal Employer's Liability act, its control is exclusive and the law of this State is no longer applicable but the Federal act, alone, governs. (*Mondou* v. *New York, New Haven and Hartford Railroad Co.* 223 U. S. 1; *St. Louis, San Francisco and Texas Railway Co.* v. *Seale,* 229 id. 156.) The cause of action of the defendant in error is founded on the act of Congress and none of the provisions of the State statute apply to it. The act authorizes the recovery of damages and places no restriction on the amount, and therefore no limitation applies except that of the damages actually sustained.

The deceased left a widow and one son, ten years old, and the plaintiff in error contends that the judgment should be reversed because the jury did not apportion the damages between the widow and the son. The defendant in error, upon leave granted, has filed a copy of the brief filed by the plaintiff in error in the Appellate Court, from which it appears that this point was not raised in that court, therefore it cannot be raised here.

Complaint is made of the first instruction given on behalf of the defendant in error, which was as follows:

"The court instructs the jury that prior to and on the 20th day of June, 1910, there was a certain act of Congress in full force and effect, which provided, among other things, as follows: 'That every common carrier by railroad, while engaging in commerce between any of the several States, shall be liable in damages to any person suffering injury while he is employed by such carrier in commerce, or, in case of the death of such employee, to his or her personal representative for the benefit of the surviving widow or husband and children of such employee, for such injury or death resulting, in whole or in part, from the negligence of any of the officers, agents or employees of

such carrier.' Said act also provides: 'That in all actions hereafter brought against any such common carrier by railroad, under or by virtue of any of the provisions of this act, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' "

It is argued that this instruction authorized the jury to find a verdict for the plaintiff if any negligence was proved, whether that charged in the declaration or not. The instruction did not direct a verdict but was a preliminary instruction calling the attention of the jury to the act on which the action was based, which must be the basis of their deliberation. It was followed by an instruction telling the jury that the instructions given were one connected body or series and should be so regarded and treated by the jury,—that is, they should be applied to the facts as a whole and not detached or separated, any one instruction from any or either of the others. In other instructions the negligence charged in the declaration was required to be proved as the basis of a recovery, and the jury were instructed that the defendant was not liable for any negligence except that charged in the declaration, and that before the plaintiff could recover he must prove that the defendant was guilty of the negligence charged against it in the declaration and that such negligence was the proximate cause of Mason's injury. There is no ground for supposing the jury misunderstood the issue. The instruction stated all of the act which was applicable to the case.

It is insisted that if this part of the act was given to the jury they should also have considered section 4, which provides that in cases brought under the act the employee shall not be held to have assumed the risks of his employment in any case where the violation by the employer of

any statute enacted for the safety of employees contributed to the injury or death of such employee. Neither the plaintiff's nor the defendant's case depended upon this section in any particular or was affected by it in the slightest degree. It had no application to the case.

The trial court did not commit error, and the judgment of the Appellate Court is affirmed. *Judgment affirmed.*