S. Arthur Taylor, Appellee, v. Southern Railway Company, Appellant.

Gen. No. 34,123.

272

Heard in the third division of this court for the first district at the February term, 1930. Opinion filed December 10, 1930. Rehearing denied and opinion modified January 5, 1931.

KRAMER, KRAMER & CAMPBELL, R. E. COSTELLO and POMEROY & MARTIN, for appellant.

ROYAL W. IRWIN, for appellee.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Plaintiff S. Arthur Taylor brought this action against the defendant Southern Railway Company, a corporation, to recover damages for personal injuries sustained near Booneville, Indiana on July 31, 1928. The action was brought under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, and resulted in a verdict in favor of the plaintiff in the sum of $30,000, upon which judgment was entered by the circuit court.

The declaration consisted of three counts, the third count of which was dismissed on motion of plaintiff at the end of plaintiff's case. The first count charged that the defendant was a railroad company and employed certain servants and agents to keep and maintain its tracks in good condition and repair; that plaintiff was employed by the defendant as road supervisor in causing the roadbed and track to be ballasted; that while so employed, and at the time exercising ordinary care for his own safety, he climbed upon one of the cars for the purpose of inspecting gravel which was to be used upon said roadbed; that said car was attached to a train consisting of seven cars and a locomotive, which said locomotive was under the care and management of an engineer employed by the defendant company; that it was the duty of the defendant to exercise ordinary care about the operation and movement of said locomotive and train, but failed to observe its duty in this regard and that by reason thereof, plaintiff, while riding upon one of said cars, was forcibly and violently thrown from said car to the ground and the train ran over plaintiff and he was injured. The second count is similar to the first with the additional allegation that the defendant "negligently caused, permitted and allowed said locomotive and cars to jerk suddenly and stop without notice or warning to the plaintiff."

To this declaration defendant filed two special pleas to the jurisdiction. The first plea charged that to per-

mit the suit to be maintained in Illinois, would be a burden on interstate commerce under the Commerce Clause of the Federal Constitution; that plaintiff was not at any time a citizen or inhabitant of Illinois, but at all times a resident of Indiana; that the defendant was a railroad corporation, organized and governed under the laws of Virginia, with its principal offices at Richmond, Virginia; that plaintiff's alleged cause of action occurred at Warrick county, Indiana; that defendant operated a road extending across Indiana and certain counties in the State of Illinois in which service could be had on the defendant; that defendant has not at any time owned, operated or controlled any line of railroad running through Cook county, Illinois, and that the defendant was, at the time of the accident, engaged in interstate commerce; that it would become necessary on the trial of the cause to bring a large number of witnesses from a great distance to testify at the trial, and that this would be an unreasonable burden upon interstate commerce.

The second plea contains the same allegations as those contained in the first plea with the further charge that the defendant at the time of the commencement of the suit maintained an office in Chicago in charge of J. P. Tocher, upon whom the alleged service of process was had by leaving a copy with him as agent of defendant; that J. P. Tocher was not at the time of said alleged service, nor before, nor since, either the president, clerk, secretary, general agent, cashier, principal, director, engineer, conductor, station agent or any agent of defendant; that Tocher had no authority to enter into any contract nor do anything on behalf of the defendant except to solicit freight for movement over such routes as would include a movement over the lines of the defendant, quote rates, and give information as to schedules and movements of trains; that the only line of railroad operated in the State by the defendant is in the eastern district of Illinois and that no lines are in Cook county.

It is insisted as to this second plea that the action does not come under section 6 of the Federal Employers' Liability Act, found in the Revised Statutes of the United States, under the act entitled "Railroads," 45 USCA 56. The provision of section 6 thereof is as follows:

"Under this Chapter an action may be brought in the district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of the commencement of such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several states."

Demurrers were sustained as to each of these pleas. There was a judgment *respondeat ouster* and thereupon defendant pleaded over by filing a plea of the general issue.

The first plea is based upon the proposition that, by reason of the additional cost of transporting witnesses for the purpose of trying the cause at a distant point in a State where neither the plaintiff nor defendant resides, an additional burden is cast upon interstate commerce. Counsel rely on *Davis v. Farmers' Co-Operative Equity Co.*, 262 U. S. 312; *Atchison, Topeka & Santa Fe Ry. Co. v. Wells*, 265 U. S. 101; *Michigan Cent. R. Co. v. Mix*, 278 U. S. 492. These cases are distinguished by the Supreme Court of Minnesota in *Boright v. Chicago, R. I. & P. R. Co.* (Minn.), 230 N. W. 457. The court in its opinion in that case, said:

"(2) 2. The cases upon which the defendant mainly relies in support of its claim that a trial in Minnesota will unreasonably burden interstate commerce are *Davis v. Farmers' Co-Op. Equity Co.*, 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996, and *Atchison, T. & S. F. R. Co. v. Wells*, 265 U. S. 101, 44 S. Ct. 469, 68 L. Ed. 928. In neither of these cases did the defendant have a line of railway or do a railway business

in the state where suit was brought, except that in the *Davis* case, it solicited freight; nor did the cause of action upon which suit was brought arise in such state; nor was the plaintiff a resident there; nor, while unimportant here but mentioned because of what is said in paragraph 4, was the action under the Federal Liability Act. In each of them the facts stated in support of the claim of unreasonably burdening interstate commerce were more persuasive than here, for in this case the affidavit on which the motion for a dismissal is based merely states that a burden will result. To these cases may be added *Michigan Cent. R. R. Co. v. Mix*, 278 U. S. 492, 49 S. Ct. 207, 73 L. Ed. 470. There an accident resulting in death occurred in Michigan, where the deceased resided and was employed by the defendant in interstate commerce and under the laws of which the defendant was incorporated. The widow of the deceased employee moved to Missouri, where suit was brought. The defendant had no line of railway in Missouri and did no business there except as it solicited freight. The maintenance of the action in Missouri was held to impose an unreasonable burden on interstate commerce within the *Davis* case, 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996.''

In the case at bar, the defendant company owned and operated certain of its lines in the State of Illinois and could, therefore, be sued in this State provided proper service was had upon the defendant. The fact that the plaintiff is a nonresident does not deprive him of the right to maintain an action in this State. His was an action on the case and transitory in its nature and could be brought wherever service of process could be had. The section of the Federal Statute already referred to provides that the jurisdiction of the United States in cases of this character, brought under the Federal Employers' Liability Act, shall be concurrent with that of the several courts of the State. The Supreme Court of this State in the case

of *American Hide & Leather Co. v. Southern Ry. Co.,* 310 Ill. 524, recognized its right to entertain jurisdiction of a cause brought in Cook county against the Southern Railway Co., the same defendant as is here defending this action, on service identical with the service had in the case at bar. We are compelled to follow the Supreme Court of this State on this question of jurisdiction and are, therefore, of the opinion that the court properly sustained the demurrer to the first plea in which it is charged that, by entertaining jurisdiction, the trial court created an additional burden on interstate commerce. Whether there was an additional burden or not, it was the duty of the trial court to entertain jurisdiction of the cause in conformity with the ruling in the case of *American Hide & Leather Co. v. Southern Ry. Co., supra.*

We are of the opinion that the trial court properly sustained the demurrer to the second plea of the defendant, under the ruling in *American Hide & Leather Co. v. Southern Ry. Co., supra.* In that case the plaintiff sued the Southern Ry. Co. in Cook county and obtained service by delivering a copy of summons to one Morris in Chicago, Cook county, Illinois and the cause was tried in that county. Defendant filed a plea in that case, charging that Morris was not its agent; that it was a nonresident defendant; that it operated lines of track through certain counties in the State of Illinois, but not in Cook county. To this plea a replication was filed and the issues tried by the court. There was a finding that Morris was employed to solicit freight shipments; that he made no contracts on behalf of the defendant and issued no bills of lading, sold no tickets and collected no money for the defendant. The facts in regard to the service were identical with the facts set forth in the plea in the case at bar. The Supreme Court held that the service was sufficient. We are necessarily governed by the law as found and laid down by our Supreme Court in

that opinion. The demurrer to the second plea was properly sustained.

From the facts in the case at bar it appears that the plaintiff was a track supervisor employed by the defendant and in charge of a work train laying ballasts. He had under his direct charge 84 miles of main line track and 32 miles of switch track. It was customary for this work train to proceed along the right of way, picking up different cars at different points. The work was started about 8 o'clock in the morning and continued until the work train arrived near a bridge, on what was known as Paul Forston's section. At this point the train ran onto a siding to let a passenger and freight train pass and to set out empties. After the passenger and freight had passed, this work train, consisting of an engine and tender, one full car of gravel next to the tender, followed by three empties and then three cars of gravel and a coach, used as a caboose, headed out onto the main track, going west until it reached the bridge where it stopped at a place where some filling was necessary. It then proceeded on over the line of track, scattering the gravel as it went. The gravel was carried in what was known as open top, drop bottom cars. These cars had drop doors through which the gravel passed on to the middle of the track. In these cars men would stand with shovels for the purpose of assisting in the unloading, in the event the gravel became clogged. A tie was placed upon the track under the rear trucks of the car, extending across the rail and, as the car moved slowly forward, this tie moving along the rails leveled off the gravel between the rails. The drop doors were set with a particular opening, so that the gravel would pass out slowly. The engine was equipped with two kinds of air brakes used for the purpose of stopping the train. The regular air brake system operated on each car of the train and was controlled by the engineer and, when applied, operated equally on each car

in the train as well as the engine. The other air brake operated on the wheels of the engine alone and was operated by the engineer and was designated as "straight air." Evidence was introduced on behalf of the plaintiff to show that the proper operation of the train by the engineer would have required the application of the regular air brakes, which would act equally upon all of the cars of the train, but that the engineer, on the day of the accident, used the brakes which applied to the engine only and that, as a result, any slack which there might have been between the cars was taken up in such a manner as to cause them to jerk and lurch forward.

Plaintiff at the time of the accident was 49 years of age. He was earning $245 a month and when away from home he was entitled to his expenses such as board bill, hotel rooms, etc. He had been doing the work of supervisor for about 6 years. He testified that on the morning of the accident he observed, owing to the roughness in the operation of the train, that the engineer was using straight air on the train; that at Gentryville about 8 o'clock in the morning he told the engineer, Renner, to use the train brake because it was less dangerous and that he did not want anybody hurt; that at noon he again told the engineer to be more careful and to use the train brake instead of the dummy brake, the dummy brake being the brake which acted on the engine only. He testified that just prior to the accident, the crew was unloading the car of gravel next to the engine and that there were three other cars of gravel back near the caboose.

At the time of the accident plaintiff testified he was upon one of the cars of gravel at the rear of the train for the purpose of inspecting it; that the train was moving very slowly at the time, not over 3 or 4 miles an hour; that he climbed over on to the foot board near the brake staff of the car and was going to go down the ladder to get on to the ground, when all at

once there was a sudden jerk or sudden lurch which was unusually rough, and his hands were jerked loose from the car and he was thrown down and fell across the rail and the wheels of the oncoming car caught his left foot and crushed and mangled it; that the train must have just about stopped and then suddenly lurched forward. He testified further that as a result of this accident his leg was amputated 6 inches above the ankle and that he was in the hospital a number of days; that his leg has since given him a great deal of trouble; that it bursts open and sloughs off, and causes him pain which runs up the leg to the knee; that if he uses his leg any length of time it becomes sore and inflamed.

Lester Shoptaugh, a witness on behalf of the plaintiff, testified that he was a member of the crew working for the defendant with the gravel train at the time of the accident; that on the day of the accident he did not believe they used the regular air brakes which operated throughout the train; that when a train is stopped by the dummy air, it gives all the cars a sudden jerk and that the last car has more jerk than the first; that at the time of the accident he was walking alongside of the car which was unloading the gravel and was watching to see if the gravel was going through; that the train came very near to a standstill and then started again hard and gave a jerk and lurched forward; that the jerk was extraordinary and harder than it had been before; that he turned and saw Taylor, the plaintiff, lying on the ground, but thought the plaintiff was looking under the train and went on for a short distance and then turned again and saw Taylor still on the ground and motioning to him; that he went back to his assistance.

Rehl, a witness for the defendant, testified that he was the conductor of the train in question at the time of the accident and that he saw a man giving a signal and walked back and saw Taylor sitting on the south

side of the track; that he asked him what was the matter and that Taylor told him he was in the act of getting over the rear end of the car and there seemed to be a jerk; that he lost his balance and it jerked his hand hold loose.

Forston, a witness, called on behalf of the defendant, testified that he did not notice any extraordinary or unusual jerks in connection with the running of the train. The witnesses Patmore, Watson, Byers and Phillips, members of the crew testified practically to the same effect.

John Renner, the engineer, testified that there was no jerk of any kind and there was no stopping of the train at the time of the accident; he denied that the plaintiff told him anything about how to use his brakes. He testified that when he went back to see Taylor after the accident, Taylor, the plaintiff, told him that he did not know how the accident happened—that he made a misstep and fell.

Renner, the fireman, testified that the movement of the engine was straight ahead with even speed with no violent jerking or backing.

Rehl, a witness for defendant, testified that he was the conductor and that he did not notice any unusual jerks or jars at the time of the accident, but that the train had a steady movement. He stated on cross-examination that if there had been a sudden stop or jerk, it would have been an improper movement of the train.

Counsel for the defendant present a number of reasons for the reversal of this judgment. A number of them, however, appertain to the weight of the proof. It is insisted that plaintiff's duties did not require him to inspect the cars of gravel while the cars were in motion and that he assumed the risk of doing his work in the most dangerous way; that there is no proof that the plaintiff's accident was due to negligence on the part of the defendant or its servants; that

the court should have directed a verdict for the defendant; that the court should have granted defendant's motion for a new trial and in arrest of judgment.

In addition to the question raised as to the weight of the evidence and the proof required, counsel insist that the court erred in giving instruction number 7 on behalf of the plaintiff; that the conduct of counsel for the plaintiff was such as to deprive the defendant of a fair trial, and that the verdict is excessive.

Under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, an employee of a railroad company engaged in interstate commerce assumes the risk of his employment, but this risk does not include such risks as are caused by the negligence of servants and employees of the company. *Erie R. Co. v. Linnekogel,* 248 Fed. 389; *Seaboard Air Line Railway v. Horton,* 233 U. S. 492; *Devine v. Chicago, R. I. & P. Ry. Co.,* 266 Ill. 248. If the proximate cause of the accident in the case at bar was the action of the engineer in suddenly causing the train to jerk and lurch forward, then the accident was caused by reason of the negligence of an employee and, consequently, was not one of the risks assumed by the plaintiff in the course of his employment. Assumed risk as we understand it under the Federal Employers' Liability Act, is risk arising by reason of defects in cars, engines, roadbeds, right of ways or instruments used, with which an employee may come in contact or is required to use during the course of his employment. Such an employee does not assume the risk of the negligent acts of fellow employees.

Counsel for the defendant cites the case of *Atlantic Coast Line R. Co. v. Davis,* 279 U. S. 34, in support of the contention that the risk was an assumed risk. The case cited, however, is easily distinguishable in that Richards, the plaintiff in that case, was injured by an iron ladder which was one of the implements or instrumentalities used by him when injured. Moreover,

Richards was a volunteer, according to that case, at the time he received the injuries which resulted in his death.

The case of *Delaware, Lackawanna and Western R. R. Co. v. Koske*, 279 U. S. 7, is distinguishable in that the charge in that case was that the defendant negligently permitted and allowed a dangerous hole to exist between certain parts of the tracks, and while plaintiff was alighting from the engine in the course of his employment he fell into this hole. Such a situation is obviously one of assumed risk, but in no way similar to the charge in the declaration in the action before us. We need go no further, however, for a consideration of that question than our own Supreme Court, which has considered almost the identical question and passed on the law in the case of *Devine v. Chicago, R. I. & P. Ry. Co.*, 266 Ill. 248. This was an action under the Federal Employers' Liability Act. The defendant Chicago, Rock Island & Pacific Railway was engaged in interstate commerce and the plaintiff Mason, who was killed, was an employee standing on the top of a train giving signals to the conductor. The train was suddenly caused to stop and Mason, the deceased, was thrown from the top of the car and killed. The Supreme Court in its opinion said:

"What has been said disposes of the contention that the plaintiff could not recover because the accident was the result of an ordinary risk of employment of the deceased. Under the Federal Employers' Liability Act the fellow-servant doctrine was not available as a defense, and if the accident was caused by the negligence of the engineer in suddenly stopping the train with unnecessary violence the deceased did not assume the risk of such negligence. The court did not err in refusing to direct the verdict." The facts in the case cited are so nearly similar to those in the case at bar that we feel it is controlling. It was the purpose of the Federal Liability Act to surround employees with

every protection, and these Federal Acts are construed liberally in favor of the employee where their rights arise thereunder.

We are of the opinion, following the case of *Devine v. Chicago, R. I. & P. Ry. Co., supra,* that the case at bar was properly submitted to the jury and that it was a question of fact for its determination and, coupled with the judgment entered thereon by the trial court, we are precluded from holding other than that there was sufficient evidence for the consideration of the jury. We cannot say from a full consideration of the evidence that the verdict of the jury is manifestly against the weight of the evidence. We find no reversible error in the conduct of counsel during the course of the trial, nor are we of the opinion that the verdict is excessive. Plaintiff, at the time of the accident was earning $3,000 a year, together with expenses, and holding a position of considerable responsibility.

Instruction number 7, the giving of which was objected to by the defendant, was considered by the Supreme Court of this State in the case of *Devine v. Chicago, R. I. & P. Ry. Co.,* already cited, and held good. It was in the language of the statute and the defendant itself, in its given instruction number 13, had the jury instructed fully on the same act and in the language of the identical statute. In that instruction the jury were told that the plaintiff could only recover for such negligence as was charged in the declaration or some count thereof and upon a preponderance of the evidence. The instruction did not direct a verdict, but was an informatory instruction as to the law and calling the attention of the jury to the act upon which the action was based and which formed the basis for their deliberation on the question of the liability of the defendant.

For the reasons stated in this opinion, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL and FRIEND, JJ., concur.